2001-NMCA-087

33 P.3d 683

**Jose L. MADRID a/k/a Joe L. Madrid, Plaintiff–Appellee,**

v.

**Medardo MARQUEZ, Defendant– Appellant.**

**No. 20,838.**

Court of Appeals of New Mexico.

Sept. 19, 2001.

Robert D. Montgomery, Albuquerque, NM, for Appellee.

Sally Ann Hagan, J.D. Behles & Associates, P.C., Albuquerque, NM, for Appellant.

*OPINION*

CASTILLO, Judge.

{1} Based on certain oral representations, Jose Madrid and his wife Celia, now deceased, transferred the title to their home to Medardo Marquez. When Marquez attempted to evict the Madrids from their home, the Madrids filed suit against Marquez and others alleging fraud, breach of contract, outrage, and prima facie tort, and requested recission and equitable reformation. After a bench trial, the district court found in favor of Madrid and ordered alternative relief: Madrid could reimburse Marquez for his expenditures related to the transfer and upkeep of the property in the amount of $56,261.96 and rescind the deed, thus returning the title to the property to Madrid, or in the alternative, Madrid could retain a life estate in the real estate with a remainder interest in Marquez. The district court also awarded Madrid $20,000 in punitive damages. Marquez appeals arguing: (1) the district court improperly awarded punitive damages; (2) there was not substantial evidence supporting the award of punitive damages or the finding of an oral agreement; (3) the statute of frauds bars enforcement of the oral contract; and (4) the district court abused its discretion in permitting two witnesses to testify. We affirm.

**BACKGROUND**

{2} Jose and Celia Madrid and Marquez were neighbors; their backyards shared a common property line. In early 1997, the Madrids took out a loan secured by a mortgage on their home. By mid 1997, they were having difficulty in making the payments. Additionally, the Madrids were suffering from a variety of medical problems. Mar-

quez was aware of the financial and medical problems suffered by the Madrids. According to the Madrids, Marquez offered to allow the Madrids to remain in their home rent free for the remainder of their natural lives and to care for them in return for a deed to the Madrid home. The Madrids accepted Marquez's offer. In late 1997, Marquez arranged for a closing at which the Madrids executed a warranty deed transferring their home to Marquez; the deed contained no language with regard to the promised life estate. Marquez refinanced the property and paid off the existing Madrid mortgage. After obtaining the deed to the Madrid home, Marquez began harassing, threatening, and intimidating the elderly and ill couple and ultimately attempted to force the Madrids from their home. The Madrids then contacted an attorney and this litigation ensued.

## I. Punitive Damages

{3} Marquez's primary argument is that punitive damages cannot be recovered without recovery of compensatory or nominal damages. *See, e.g., Sanchez v. Clayton,* 117 N.M. 761, 767, 877 P.2d 567, 573 (1994); *Hudson v. Otero,* 80 N.M. 668, 671, 459 P.2d 830, 833 (1969), *overruled on other grounds by Allsup's Convenience Stores, Inc. v. N. River Ins. Co.,* 1999–NMSC–006, 127 N.M. 1, 976 P.2d 1; *Montoya v. Moore,* 77 N.M. 326, 330–31, 422 P.2d 363, 365–66 (1967); *Crawford v. Taylor,* 58 N.M. 340, 343, 270 P.2d 978, 979–80 (1954); *Gonzales v. Sansoy,* 103 N.M. 127, 129–31, 703 P.2d 904, 906–08 (Ct. App.1984). While we agree that Marquez correctly states the general law of New Mexico regarding punitive damages, none of the cases cited consider the specific question of whether punitive damages may be awarded in equity. This is a case of first impression in New Mexico. Upon review of the purpose and the history of punitive damages in general and the law in other jurisdictions, we believe justice is better served by allowing the award of punitive damages in those equity cases where the conduct of the wrongdoer warrants punitive damages in order to deter clearly unacceptable behavior.

{4} Punitive damages are defined as "sums awarded in addition to any compensatory or nominal damages, usually as punishment or deterrent levied against a defendant found guilty of particularly aggravated misconduct, coupled with a malicious, reckless or otherwise wrongful state of mind." 1 Dan B. Dobbs, *Law of Remedies* § 3.11(1), at 455 (2d ed.1993) (footnote omitted). Punitive damages punish the wrongdoer and serve as a deterrent; the award does not measure a loss suffered by the plaintiff. *Sanchez,* 117 N.M. at 766, 877 P.2d at 572; *Sansoy,* 103 N.M. at 129, 703 P.2d at 906 (stating that punitive damages serve as a warning to others). Punitive damages are based on the wrongdoer's misconduct, such as acting fraudulently and in bad faith. *Gonzales v. Surgidev Corp.,* 120 N.M. 151, 154, 899 P.2d 594, 597 (1995); *Sansoy,* 103 N.M. at 129, 703 P.2d at 906.

{5} Historically, the judicial system in the United States was patterned after the English system with separate courts of law and equity. 1 *Dobbs, supra,* § 2.1(1), at 55 56. Punitive damages could be awarded only in a court of law. *Recent Developments—Punitive Damages Held Recoverable in Action for Equitable Relief,* 63 Colum. L.Rev. 175, 176 (1963). Over the years, the court structure evolved and separate court systems for law and equity no longer exist; instead, most jurisdictions now have a merged system of courts of law and equity. *Id.* at 177; 1 Linda L. Schlueter & Kenneth R. Redden, *Punitive Damages* § 4.1(A)(3), at 128 (4th ed.2000). New Mexico has a merged system. *Hall v. Bryant,* 66 N.M. 280, 284, 347 P.2d 171, 173 (1959).

{6} During the evolution of the combined system, a split of authority developed regarding the award of punitive damages in equity. Marquez urges us to adopt the majority rule that no punitive damage awards are made in equity because punitive damages are traditionally awarded for vengeance or punishment, and equity is not the place for such a remedy. *Livingston v. Woodworth,* 56 U.S. 546, 549–50, 15 How. 546, 14 L.Ed. 809 (1853); *Stolz v. Franklin,* 258 Ark. 999, 531 S.W.2d 1, 5 (App.1975); *Seal v. Hart,* 755 P.2d 462, 465 (Colo.Ct.App.1988); *Beals v.*

*Washington Int'l, Inc.,* 386 A.2d 1156, 1159–60 (Del.Ch.1978); *Superior Const. Co. v. Elmo,* 204 Md. 1, 104 A.2d 581, 583–87 (1954); *Fleischer v. James Drug Stores, Inc.,* 1 N.J. 138, 62 A.2d 383, 387 (1948).

{7} On the other hand, other jurisdictions follow a more modern trend and award punitive damages in equity in order to facilitate judicial administration, to deter misconduct, and to completely serve justice. *See, e.g., Youngblood v. Bailey,* 459 So.2d 855 (Ala. 1984) (awarding punitive damages for fraudulent behavior in loss of an automobile); *Haskins v. Shelden,* 558 P.2d 487 (Alaska 1976) (awarding punitive damages in replevin); *Starkovich v. Noye,* 111 Ariz. 347, 529 P.2d 698 (1974) (in banc) (awarding punitive damages in reformation of a joint venture agreement for fraudulently inducing plaintiff to sign agreement); *Vill. of Peck v. Denison,* 92 Idaho 747, 450 P.2d 310 (1969) (awarding punitive damages for interfering with plaintiff's ·water rights); *Charles v. Epperson & Co.,* 258 Iowa 409, 137 N.W.2d 605 (Iowa 1965) (awarding punitive damages for misappropriation of funds in transaction to a company); *Tideway Oil Programs, Inc. v. Serio,* 431 So.2d 454, (Miss.1983) (en banc) (allowing punitive damages as a relief in chancery court); *Gould v. Starr,* 558 S.W.2d 755 (Mo. Ct.App.1977) (awarding punitive damages in equity for dishonest conduct as a trustee); *I.H.P. Corp. v. 210 Cen. Park S. Corp.,* 12 N.Y.2d 329, 239 N.Y.S.2d 547, 189 N.E.2d 812 (1963) (awarding exemplary damages when injunctive relief granted).

{8} We find the modern approach to be more persuasive. Requiring an award of compensatory damages as a prerequisite to an award for punitive damages is a technical rule that should not be applied blindly, without an appreciation for its underlying rationale. As noted by the Idaho court in *Denison:*

> The reason for such a requirement is that it·first insures that some legally protected interest has been invaded. It prevents the assessment of punitive damages against one who may have caused damage without legal injury. There is no reason why an award of equitable relief may not fulfill this same function, for in either case it is necessary first to show an invasion of some legally protected interest.

*Denison,* 450 P.2d at 314–15. New Mexico law allows a plaintiff who establishes a cause of action in law, to recover punitive damages as long as the wrongdoer's conduct is willful, wanton, malicious, reckless, oppressive, grossly negligent, or fraudulent and in bad faith. *Sanchez,* 117 N.M. at 767, 877 P.2d at 573; *Sansoy,* 103 N.M. at 129, 703 P.2d at 906. We believe that a person's misconduct must be addressed regardless of whether the underlying case is brought in law or equity. We adopt a similar test for cases brought in equity. A plaintiff must establish a cause of action in equity and the wrongdoer's misconduct must be willful, wanton, malicious, reckless, oppressive, grossly negligent, or fraudulent and in bad faith. Permitting the recovery of punitive damages under these circumstances is a natural development because tradition "should yield to ... doing complete justice in equity." Gerald J. Robinson, *Punitive Damages in Equity,* 16 Md. L.Rev. 68, 73 (1956).

{9} This case is a prime example of why punitive damages should be awarded in equity. Marquez's fraudulent conduct induced the Madrids to transfer their house to him. Marquez harassed, threatened, and intimidated the Madrids. He made continuing promises to memorialize his promise of a life estate for the Madrids but never put it in writing. He attempted to evict the Madrids. Marquez's fraudulent and intimidating behavior is precisely the kind of behavior that warrants an award of punitive damages. In this case, granting punitive damages serves complete justice by awarding complete relief and by deterring others from committing similar misconduct, thus facilitating judicial administration. The district court properly awarded punitive damages in equity.

## II. Substantial Evidence Arguments

{10} Marquez makes two arguments on appeal that we decline to review. He argues that there was no evidence supporting (1) findings of a culpable mental state necessary to sustain the award of punitive damages, and (2) the finding that Marquez orally agreed to give the Madrids a life estate in

the property. In support of these arguments, Marquez presents an incomplete summary of the evidence, in violation of Rule 12 213(A)(3) NMRA 2001 ("a contention that a verdict, judgment or finding of fact is not supported by substantial evidence shall be deemed waived unless the summary of proceedings includes the substance of the evidence bearing upon the proposition"). Most significantly, Marquez fails to present the evidence supporting Madrid's position and then relies on his own testimony which the district court found completely without credibility. Because Marquez does not include the substance of all of the evidence bearing upon the issues of culpable mental state and the oral contract, we hold that he waived such argument. *See Murillo v. Payroll Express*, 120 N.M. 333, 901 P.2d 751 (Ct.App. 1995).

### III. Statute of Frauds

{11} Marquez argues that as a matter of law the Statute of Frauds bars enforcement of the agreement. While Marquez acknowledges that substantial performance is an exception to the Statute of Frauds, he would limit our consideration of events to those occurring after closing at the title company and have us ignore the many discussions and acts of the parties that took place well before the closing. Marquez's argument reflects the whole tenor of this case. He continues to argue that since he never agreed in writing to allow the Madrids to keep a life estate, they have no right to the life estate that was orally agreed to. The purpose of the Statute of Frauds is to protect the parties, not to allow one party to defraud the other. *Herrera v. Herrera*, 1999–NMCA–034, ¶ 13, 126 N.M. 705, 974 P.2d 675. The district court enforced an oral promise between Marquez and the Madrids based on partial performance and properly fashioned a remedy that allowed the Madrids to have the benefit of their bargain or rescind the entire agreement. Substantial evidence supports the district court's determination, and we reject Marquez's argument

that a written agreement was necessary to convey a life estate to the Madrids.

### IV. Testimony of Witnesses

{12} Marquez argues that the district court erred in allowing Barbara Schuessler and Officer Xavier Tapia to testify because the Madrids did not identify them as witnesses until after the date established in the scheduling order. We review the district court's decision for an abuse of discretion. *State v. Lasner*, 2000–NMSC–038, ¶ 16, 129 N.M. 806, 14 P.3d 1282.

{13} The scheduling order required the parties to identify witnesses by March 31, 1999. On May 18, 1999, Madrid filed a supplemental witness list naming Schuessler and Officer Tapia. Discovery concluded on May 21, 1999. Although trial was originally set for June 4, 1999, it was rescheduled for September 7, 1999. Marquez had notice within the discovery period and had adequate time to contact the witnesses or take other action he might have deemed prudent regarding other options. Marquez was not the victim of surprise or other manifest unfairness. *See El Paso Elec. Co. v.. Real Estate Mart, Inc.*, 98 N.M. 570, 572, 651 P.2d 105, 107 (Ct.App. 1982) (holding that trial court did not abuse its discretion in permitting testimony of a witness identified in time to allow opposing counsel the opportunity to interview the witness). The district court did not abuse its discretion in allowing witnesses, Schuessler and Officer Tapia, to testify.

### CONCLUSION

{14} We affirm the district court on all issues.

{15} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge and CYNTHIA A. FRY, Judge.