**Certiorari Granted, No. 31,637, May 13, 2009**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-051**

**Filing Date:  March 13, 2009**

**Docket No. 27,132**

**JACKIE AKINS,**

> **Plaintiff-Appellee/Cross-Appellant,**

**v.**

**UNITED STEELWORKERS OF AMERICA,**
**AFL-CIO, CLC, LOCAL 187,**

> **Defendant-Appellant/Cross-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Gary L. Clingman, District Judge**

Martin Law Firm
Lane T. Martin
W. T. Martin, Jr.
Carlsbad, NM

for Appellee/Cross-Appellant

Youtz and Valdez, P.C.
Shane C. Youtz
Albuquerque, NM

USW Associate General Counsel
Bruce Fickman
Pittsburgh, PA

for Appellant/Cross-Appellee

**OPINION**

**KENNEDY, Judge.**

1

**{1}** In this case, we determine that there is no need to address the first-impression question of choosing which statute of limitations applies to civil suits between public employees and their unions. The options rest between the six-month statute of limitations for prohibited practices under the Public Employee Bargaining Act (the PEBA) and the four-year catch-all statute of limitations applied by the district court to this common-law suit for breach of a union's duty of fair representation (the DFR). Determining that the six-month statute of limitations does not apply retroactively in this case, we affirm the district court's application of the four-year common-law statute of limitations. Proceeding to the merits of the claim, we hold: (1) the district court's award of both compensatory and punitive damages against the Union was proper; and (2) the district court's refusal to allow either evidence of or a jury instruction concerning intentional infliction of emotional distress was proper. We affirm.

**BACKGROUND**

**{2}** Plaintiff Jackie Akins was a public employee who worked for the City of Carlsbad from 1992 until 2002. During that time, Defendant United Steelworkers of America, AFL-CIO, Local 187 (the Union) was the recognized collective bargaining representative for a unit of city employees that included Plaintiff. On March 22, 2004, Plaintiff filed claims against both the City of Carlsbad and the Union for breach of the DFR, intentional infliction of emotional distress, and prima facie tort. Plaintiff's claims stemmed from allegations that he was subjected to hostile working conditions created by coworkers who harassed him and racially discriminated against him by refusing to speak English to him and subjecting him to racial slurs. Pursuant to a stipulated partial dismissal with prejudice, the district court ordered the claims against the City of Carlsbad dismissed. Concerning the claims against the Union, the district court granted summary judgment in the Union's favor on Plaintiff's claims of intentional infliction of emotional distress and prima facie tort and on one of two grievances under the claim of breach of the DFR, dismissing the other entirely.

**{3}** Plaintiff's remaining claim of breach of the DFR was premised on allegations that the Union failed to properly process a grievance for racial discrimination. Plaintiff claimed that as an employee of the City of Carlsbad and a member of the Union, he was exposed to racial discrimination when his coworkers repeatedly referred to him as "pinche miyate," which in Spanish means "fucking nigger." He also claimed that his coworkers and supervisor refused to speak English to him, alienating him and further frustrating his efforts to do his job. He approached the president of the Union on the matter and was told that "he was the wrong color" and that "he needed to learn to speak Spanish."

**{4}** In its motion for summary judgment on the DFR claim, the Union argued that Plaintiff was barred by the six-month statute of limitations as well as by a lack of factual support. The district court held that Plaintiff brought his DFR claim as a common law action, not pursuant to the PEBA, and that it was therefore subject to the four-year statute of limitations under NMSA 1978, Section 37-1-4 (1953) (the statute of limitations for actions "founded upon accounts and unwritten contracts; those brought for injuries to

2

property or for the conversion of personal property or for relief upon the ground of fraud, *and all other actions not herein otherwise provided for*") (emphasis added).

**{5}**     Following a jury trial on whether the Union breached its DFR, the district court entered judgment in favor of Plaintiff for $1,661.60 in actual damages and $30,000.00 in punitive damages. Both the Union and Plaintiff appealed. The Union argues that the district court erred by: (1) applying the four-year rather than the six-month limitation period to the DFR claim, (2) allowing the jury to consider punitive damages, and (3) failing to reduce the amount of the punitive damages. As cross-appellant, Plaintiff argues that the district court erred by neither allowing evidence at trial of intentional infliction of emotional distress nor tendering to the jury an instruction on intentional infliction of emotional distress. We address the four issues.

**DISCUSSION**

**1.      Statute of Limitations**

**{6}**     We first address the dispositive issue raised in the Union's appeal: whether the six-month rather than the four-year statute of limitations should have governed the claim by Plaintiff against the Union for breach of the DFR. If the former applies, the Union prevails, and the entire case is barred; if the latter applies, we reach the merits of the case. Because the facts relevant to the limitation period are undisputed, with the issue instead being a legal issue as to which limitation period is applicable, this Court reviews de novo whether the district court correctly applied the law to the undisputed facts. *See Haas Enters., Inc. v. Davis*, 2003-NMCA-143, ¶ 9, 134 N.M. 675, 82 P.3d 42. For the reasons set out below, Plaintiff's argument persuades us that the six-month statute of limitations adopted under the PEBA does not retroactively apply to this case. Our holding effectively short-circuits the question of which limitations period otherwise governs, and it demands that we reach the merits of the case.

**Six-Month Limitation Period Should Have a Limited Retroactive Effect**

**{7}**     The question of the proper statute of limitations in a suit for breach of the DFR is an issue of first impression in New Mexico. Plaintiff argues that because a breach of a union's DFR is not a "prohibited practice" under the PEBA, he could not have anticipated that he was subject to the PEBA's six-month limitation period for prohibited practices. In addition, he argues that adoption of a six-month limitation period would divest him of a judgment vindicating rights that he vigorously fought to defend. Conversely, the Union argues that retroactive versus prospective analysis is not necessary because application of the PEBA's six-month limitation period is not a "new rule" of law subject to such an analysis. Instead, it maintains that "New Mexico law had already formulated its response to the limitations question" because it is well settled by *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 169, 172 (1983), that claims of breach of the DFR under the National Labor Relations Act (NLRA) are subject to a six-month statute of limitations. The

3

Union also maintains that New Mexico case law directs this Court to interpret the PEBA consistently with federal interpretations of the NLRA.

{8}     We begin by reiterating that this case deals with a public employee and collective bargaining in the public sector. In *Callahan v. New Mexico Federation of Teachers-TVI*, 2006-NMSC-010, ¶ 25, 139 N.M. 201, 131 P.3d 51, our Supreme Court was quite clear when it held that remedies against unions for breach of the DFR are not available to employees within the dispute-resolution provisions of the PEBA because breach of the DFR is not specifically listed as a prohibited practice under the Act. *Id.* ¶¶ 25, 29.

{9}     Despite statements in federal cases that the DFR is a "statutory duty" of the NLRA under 29 U.S.C. § 158(b) (1974), *see Vaca v. Sipes*, 386 U.S. 171, 176-77 (1967), our Supreme Court has not brought the DFR actions into New Mexico's statutory fold. Furthermore, the Court has not discussed the applicability of the PEBA statute of limitations when an employee exercises his right to remove himself from the jurisdiction of the National Labor Relations Board and proceeds in a state court. Our holding here concerns only the retroactive applicability of the PEBA's six-month statute of limitations.

{10}     The NLRA does not govern collective bargaining in the public sector. Nevertheless, our case law also instructs us to look to the NLRA for guidance in interpreting the PEBA statutory provisions that are substantially identical to provisions in the NLRA. *See Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-031, ¶ 15, 123 N.M. 239, 938 P.2d 1384 (stating that "we should interpret language of the PEBA in the manner that the same language of the NLRA has been interpreted, particularly when that interpretation was a well-settled, long-standing interpretation of the NLRA at the time the PEBA was enacted"); *Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 18, 125 N.M. 401, 962 P.2d 1236 (same). Because of our holding on the issue of retroactivity in this case, we do not reach the first impression question of which statute of limitations the NLRA demands in the DFR case, and we do not consider whether and to what extent the NLRA impacts the DFR cases under the PEBA and *Callahan*.

**Retroactivity**

{11}     Upon the Union's refusal to file his grievance, Plaintiff transferred to another department and waited nearly thirty-six months to file suit in late March 2004. This was over twenty months after he left his employment in early July 2002. The six-month limitation period was subsequently adopted as a regulation under Prohibited Practices Proceedings, Part 3 of Chapter 21 in Title 11 of the New Mexico Administrative Code, 11.21.3.9 NMAC (3/15/2004). The history at the end of Part 3 provides that the predecessor to Part 3 was repealed on July 1, 1999, and that no new regulations were in effect until March 15, 2004. As a result, Plaintiff filed his March 22, 2004 complaint only seven days after the limitation period first took effect. Also, to the extent that *Callahan* suggests that we apply any standard rooted in the NLRA, *Callahan* itself was not decided until *after* Plaintiff could have filed a timely complaint under the six-month limitation period.

**{12}** *Beavers v. Johnson Controls World Services, Inc.*, 118 N.M. 391, 398, 881 P.2d 1376, 1383 (1994), provides that there is "a presumption that a new rule adopted by a judicial decision in a civil case will operate retroactively." However, such a presumption "can be overcome by an express declaration, in the case announcing the new rule, that the rule is intended to operate with modified or selective (or even, perhaps, pure) prospectivity." *Id.* *Beavers* also provides that such a presumption "may be overcome by a sufficiently weighty combination of one or more" of the factors set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971). *Beavers*, 118 N.M. at 398, 881 P.2d at 1383; *see Whenry v. Whenry*, 98 N.M. 737, 739, 652 P.2d 1188, 1190 (1982) (adopting the approach of *Chevron Oil*); *Walker v. Maruffi*, 105 N.M. 763, 769, 737 P.2d 544, 550 (Ct. App. 1987) (relying on the factors in *Chevron Oil* to determine whether the statute of limitations should be given only prospective effect).

**{13}** In *Chevron Oil*, the United States Supreme Court described the following factors, which *Whenry* quoted:

> *First*, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.

> *Second*, . . . "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation."

> *Finally*, we . . . weigh[] the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Beavers*, 118 N.M. at 398, 881 P.2d at 1383 (quoting *Whenry*, 98 N.M. at 739, 652 P.2d at 1190); *see also Stein v. Alpine Sports, Inc.*, 1998-NMSC-040, ¶¶ 8-9, 126 N.M. 258, 968 P.2d 769 (applying the *Chevron Oil* factors to determine whether the presumption of retroactivity was overcome).

**{14}** While New Mexico case law clearly put litigants on notice that the PEBA unions are held to the same implied statutory DFR as are NLRA private-employee unions, the PEBA claims remain distinct from statutes administering private-sector labor relations. Breach of the DFR does not dictate a plaintiff's action within the administrative framework because the PEBA does not specify breach of the DFR as a prohibited practice. *Callahan*, 2006-NMSC-010, ¶¶ 24, 29. In looking to the NLRA, as the Union urges us to do, we observe that claims against a union by an employee for breach of the DFR in the private sector are subject to a six-month statute of limitations applicable to unfair labor acts. *DelCostello*, 462 U.S. at 169. *Callahan* is silent on the procedural application of federal labor statutes to breach

of the DFR. Whether *Callahan* foreshadowed an application of *DelCostello* to public-sector DFR cases is a question that is compounded by the fact that the NLRA's limitation period is a result of statutory enactment by Congress, while in New Mexico the limitation period is an administrative prescription.[1]

{15}    In assessing prospective or retroactive application of the six-month limitation period under the first *Chevron Oil* factor, we consider the relationship in time between a new regulation replacing clear past precedent and the timetable of this case. The PEBA delegated rule-making power to the Public Employee Labor Relations Board. NMSA 1978, § 10-7E-9 (2003). This legislative delegation of rule-making power presumably resulted in the enactment of the six-month limitation period by regulation 11.21.3.9 NMAC that took effect on March 15, 2004. Because the predecessor regulation was repealed nearly five years earlier and was not replaced until seven days before Plaintiff filed his complaint on March 22, 2004, Plaintiff's reliance on the four-year limitation period under Section 37-1-4 was reasonable. Retroactive application of the six-month limitation period to when Plaintiff was first aware of his DFR claim in 2002 would have obligated him to file it well before the regulation that adopted the six-month limitation period even took effect—or before the statute had authorized it. Accordingly, we do not believe that New Mexico attorneys were on notice by the time of its enactment of the possible new administrative limitation period for breach of the DFR claims under the PEBA; the authorities summarized above suggest that such enactment cannot be used to foreclose judicial review of a claim. *Cf. Jones v. Consol. Freightways Corp.*, 776 F.2d 1458, 1463 (10th Cir. 1985) (holding that clear past precedent existed prior to *DelCostello* which an employee could justifiably have relied upon for the state limitations period in a private-sector NLRA action against the employer for breach of the DFR).

{16}    Under the second *Chevron Oil* factor, we observe that *DelCostello* and the policy justifications underlying its holding foreshadowed the argument that a six-month statute of limitations might apply in DFR cases. *DelCostello*, 462 U.S. at 167-68, 171. The same policy grounds are also present in a PEBA dispute: namely, balancing interests in allowing an employee to set aside what he views as an unjust grievance procedure under the collective bargaining system while simultaneously promoting stable bargaining relationships for all through "relatively rapid final resolution" of labor controversies. *Id.* We note, however, that in *DelCostello*, union members brought suits for breach of the DFR against their unions and employers under *federal* labor statutes. No federal statutes of limitation applied directly to the cases, and the Supreme Court was called upon to decide whether to apply the NLRA's six-month statute of limitation by analogy or to apply state statutes of limitation. *Id.* at 154-55. The Court chose the former, reasoning that the drafters of state statutes of limitation rarely, if ever, devise their rules with "national interests in mind" and that state law should not "interfere with the implementation of national [labor] policies." *Id.* at 161 (internal quotation marks and citation omitted). Such considerations find little traction upon our facts

---

[1] *See generally* 12 A.L.R. 5th 950, § 2 (1993) (providing that most state courts decline to extend the *DelCostello* holding to public sector employees by analogy).

and are easily distinguishable. Here, the Union asks us to apply the PEBA's six-month statute of limitations for prohibited practices to a claim of breach of the DFR. It relies on *DelCostello* in its argument that the PEBA's "similarity" to the NLRA demands such a result. *Id.* But the Union's reasoning overlooks the fact that our PEBA does not recognize a claim for breach of the DFR. Such reasoning further ignores the fact that *DelCostello* dealt with a direct conflict between state and federal law on a claim arising under federal law. Plaintiff's claim involves no such facts. Instead, he asks us to decide between two state law statutes of limitation and on the issue of retroactivity. We thus hold that *DelCostello* does not restrain our decision today.

**{17}** The third *Chevron Oil* factor argues in favor of limiting the retroactive application of the six-month limitation period because strict application would produce inequitable results under the circumstances of this case. Retroactive application of the six-month limitation period beginning when Plaintiff first became aware of his DFR claim in 2002 would have obligated him to file his claim one-to-two years before the enactment of New Mexico's six-month limitation period. Such a result seems patently unfair. In and of itself, it constitutes a valid basis for concluding that Plaintiff had at least six months, beginning at the enactment of 11.21.3.9 NMAC, in which to file his complaint in district court. *See also Coachella Valley Mosquito & Vector Control Dist. v. Cal. Pub. Employment Relations Bd.*, 112 P.3d 623, 635-36 (Cal. 2005) (holding that only a prospective application of the administratively prescribed statute of limitations such that the limitation period "commences on the effective date of the statute, rather than on the date the cause of action accrued" would be fair). Because we thus limit the six-month limitations period from applying to Plaintiff's DFR claims here, Plaintiff's DFR claim was timely; it was filed in the district court within six months of the effective date of the six-month limitation period.

**{18}** As applied to the facts of this case, we hold that retroactive application of the six-month statute of limitations as prescribed by regulation is unwarranted, and we affirm the district court. We now turn to the merits of Plaintiff's appeal.

## 2. Jury's Consideration of Punitive Damages

**{19}** The Union argues that punitive damages are not a proper remedy in a case for breach of the DFR and contends that the district court erred by allowing the jury to consider punitive damages. We review de novo whether the district court applied correct principles of law in allowing punitive damages. *See Martinez v. Martinez*, 93 N.M. 673, 676, 604 P.2d 366, 369 (1979). For the reasons which follow, we hold that punitive damages may be recovered in a case for breach of the DFR when a union's harmful conduct is sufficiently outrageous, and that there was no error in allowing the jury to consider punitive damages in this case.

**{20}** The Union recognizes that "a duty of fair representation claim against a public-sector union is necessarily a matter of state law" but asks us to use federal law in our analysis. The Union asks us to adopt the rule pronounced in *International Board of Electrical Workers v.*

7

*Foust*, 442 U.S. 42, 51-52 (1979), and to altogether reject punitive damages as an available remedy. On the other hand, the concurring opinion in *Foust* gives solid reasons for limiting the scope of this holding and expresses the view that in a proper case, punitive damages are recoverable. "If a union's conduct should reveal intentional racial discrimination, deliberate personal animus, or conscious infringement of speech and associational freedoms," there is no reason that a punitive award cannot be justified. *Foust*, 442 U.S. at 60 (Blackmun, J., concurring). "Punitive damages in such an exceptional case will serve at least to deter egregious union conduct[.]" *Id.* Justice Blackmun was not alone in his belief that punitive damages should be available against a labor union under the right circumstances. Prior to *Foust*, several federal jurisdictions held that punitive damages could constitute an appropriate remedy against labor unions. *Harrison v. United Transp. Union*, 530 F.2d 558, 563-64 (4th Cir. 1975) (holding that punitive damages are available against a labor union in the DFR cases); *Butler v. Local Union 823, Int'l Bhd. of Teamsters*, 514 F.2d 442, 454 (8th Cir. 1975) (indicating that punitive damages are available against a labor union guilty of "outrageous or extraordinary conduct"), *overruled on other grounds by United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 60 (1981); *Int'l Bhd. of Boilermakers v. Braswell*, 388 F.2d 193, 199-201 (5th Cir. 1968) (holding that punitive damages are available against a union under the Labor-Management Reporting and Disclosure Act of 1959). We note that *Foust*'s majority holding does not control our decision.

**{21}**  *Foust* held that punitive damages may not be awarded against a union in a cause of action arising under federal labor law. *Foust*, 442 U.S. at 51-52; *see also Vaca*, 386 U.S. at 195-98. In this case, we decide only whether punitive damages may be awarded against a labor union where the plaintiff's cause of action arises under state common law and includes egregious racial discrimination. Unlike *Foust*, in which the DFR claim involved a breach of statutory duty, *id.* at 46-47, the New Mexico Supreme Court held in *Callahan* that breach of the DFR is not a statutory cause of action arising under the PEBA. *Callahan,* 2006-NMSC-010, ¶ 3. The Court concluded that in *Vaca*, the DFR arose directly from federal laws like the NLRA and the RLA. *Callahan*, 2006-NMSC-010, ¶¶ 3, 12. On the other hand, "a claim against a union for breach of [the] duty of fair representation does not fall within the 'prohibited practices' of [the] PEBA I." *Id.* ¶ 24. For these reasons, it is apparent that federal law does not preempt a cause of action for breach of the DFR. Other courts have also recognized the DFR as an individual right, not a right to be preempted by the NLRA or other federal labor statutes. *See Norton v. Adair County*, 441 N.W.2d 347, 350, 355 (Iowa 1989); *Lewis*, 750 F.2d at 1376.

**{22}**  By virtue of its collective bargaining provision, the duty of fair representation was created "as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Vaca*, 386 U.S. at 182. A union "has a duty to represent fairly the interests of all of its members in any dealings with the employer resulting from its exclusive right to represent all bargaining-unit members." *Lewis*, 750 F.2d at 1376. "A breach of the duty of fair representation is proved only by facts that establish the union 'acted arbitrarily, fraudulently or in bad faith.'" *Granberry v. Albuquerque Police Officers Ass'n*, 2008-NMCA-094, ¶ 6, 144 N.M. 595, 189 P.3d 1217

8

(quoting *Callahan*, 2006-NMSC-010, ¶¶ 3, 15). "[M]ere negligence on the part of [the] union is not enough." *Granberry*, 2008-NMCA-094, ¶ 7 (first alteration in original) (internal quotation marks and citation omitted). "[A]bsent justification or excuse, a union's negligent failure to take a basic and required step, unrelated to the merits of the grievance, is a clear example of arbitrary and perfunctory conduct which amounts to unfair representation." *Howse v. Roswell Indep. Sch. Dist.*, 2008-NMCA-095, ¶ 8, 144 N.M. 502, 188 P.3d 1253 (alteration in original) (internal quotation marks and citation omitted).

**{23}** The holding in *Foust* was the result of the Supreme Court's concern that excessive punitive awards would damage national labor policy by undermining the effectiveness of unions as collective bargaining agents. *Foust*, 442 U.S. at 50-51. The Court opined that the financial instability that could result from such punitive awards might ultimately damage employees, "whose welfare depends upon the strength of their union." *Id.* at 51. We agree in principle that the interests of union members to organize is valuable and must be protected. We are convinced that New Mexico's system for awarding punitive damages provides protection to union members by operating as a deterrent to the type of outrageous behavior displayed by Defendant in this case.

**{24}** Therefore, we are persuaded by the concurring opinion in *Foust* that punitive damages awards can serve a legitimate deterrent purpose in "those rare cases where the union's conduct can truly be described as outrageous" or where motivated by "intentional racial discrimination." *Id.* at 60. This reasoning is consistent with the general policy in New Mexico for allowing punitive damages. "New Mexico law allows a plaintiff who establishes a cause of action in law to recover punitive damages as long as the wrongdoer's conduct is willful, wanton, malicious, reckless, oppressive, or fraudulent and in bad faith." *Bogle v. Summit Inv. Co.*, 2005-NMCA-024, ¶ 28, 137 N.M. 80, 107 P.3d 520. Additionally, in a case such as this, actual damages may be hard to quantify, especially if the plaintiff continues to work in the hostile environment, but punitive damages would serve the ultimate goal of deterring such detestable behavior. *See State Farm Mut. Auto. Ins. Co. v. Maidment*, 107 N.M. 568, 571, 761 P.2d 446, 449 (Ct. App. 1988) ("New Mexico has long recognized that punitive damages are assessed to punish . . . and not to compensate for loss by a plaintiff.").

**{25}** New Mexico is not alone in awarding punitive damages against a labor union for breach of the DFR, although we remain one of the few states to have made a decision on the issue. In *Norton*, the district court refused to issue the plaintiff's jury instruction on punitive damages for breach of the DFR. *Norton*, 441 N.W.2d at 363. The Iowa Supreme Court reversed, holding that "punitive damages against a union are permissible upon proof of actual or legal malice." *Id.* The court noted that district courts are fully capable of applying standards to "prevent improper punitive awards that would unfairly harm the collective interests of union members." *Id.* The court went on to conclude that "allowing punitive damages against a union under the proper circumstances will promote the members' interest in fair representation by punishing the union for its misconduct and by deterring future wrongdoing." *Id.* We agree with *Norton*.

9

**{26}**      The actions of the Union in this case, as reflected in the jury's verdict, demonstrate such conduct as referred to in *Norton*.      After being subjected to overt racism in the workplace, Plaintiff called upon the Union to file a grievance, and it refused to do so. Plaintiff was the only African-American working in his department at the City of Carlsbad. His coworkers refused to speak English to him and his supervisor would only issue orders in Spanish, a language that he did not speak.  When he complained to his supervisor that he could not speak or understand Spanish, his supervisor nevertheless continued to give orders in Spanish.  When Plaintiff asked the Union to file a grievance on his behalf, he was told by the Union president that he was the "wrong color" and that he "needed to learn to speak Spanish."  Eventually, after repeated attempts to have a grievance filed on his behalf, Plaintiff left his job.  Such conduct, particularly that conduct directed toward Plaintiff's race, is sufficiently reprehensible to allow the issue of punitive damages to be considered by the jury.  To the extent that a union member refers to another member by the term "nigger" or is allowed such use by a union official, any policy reasons that might otherwise insulate the union from punitive damages evaporate.

**{27}**      We agree with the concurring opinion in *Foust* that "[t]he appropriate remedy for a breach of a union's duty of fair representation must . . . vary with the circumstances of the particular breach."  *Foust*, 442 U.S. at 53 (Blackmun, J., concurring) (quoting *Vaca*, 386 U.S. at 195).  A court seeking "a remedy to match the union's wrong" must be allowed to deploy the full "panoply of tools traditionally used by courts to do justice between [the] parties."  *Id.*  Punitive damages constitute one of these tools.  And in cases of "intentional racial discrimination, deliberate personal animus, or conscious infringement of speech [or] associat[ed] freedoms," no principle of labor policy stands in the way of such an award.  *Id.* at 60.  Courts should allow the issue of punitive damages to go forward against a union where appropriate, and when the union's activities are merely negligent, the union has no cause for worry.  "No court . . . has ever held that negligence can form the basis for a proper punitive damages award."  *Id.* at 61.  We agree.

**{28}**      For the above reasons, we hold that punitive damages may be awarded against a union in a common law DFR action where its actions are wilful, wanton, malicious, reckless, oppressive, or fraudulent and in bad faith.  We affirm.

**3.      Whether the Jury's Award of Punitive Damages Was Excessive**

**{29}**      We turn now to whether the amount of punitive damages awarded by the jury was excessive.  The Union argues that the district court should have reduced the amount and that the court misapplied the law that limits the amount of punitive damages relative to compensatory damages.

**{30}**      "In New Mexico, the rule has been that a punitive damages award will be upheld if substantial evidence supports the jury's finding."  *Aken v. Plains Elec. Generation & Transmission Coop.*, 2002-NMSC-021, ¶ 17, 132 N.M. 401, 49 P.3d 662.  We review the reasonableness of a punitive damages award de novo.  *Chavarria v. Fleetwood Retail Corp.*,

10

2006-NMSC-046, ¶ 36, 140 N.M. 478, 143 P.3d 717. "Under de novo review, we are to make an independent assessment of the record." *Aken*, 2002-NMSC-021, ¶ 19.

**{31}** In assessing the propriety of punitive damages awards, we apply the guideposts laid out by the United States Supreme Court in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574-75 (1996): "(1) the reprehensibility of the defendant's conduct . . . ; (2) the relationship between the harm suffered and the punitive damages award; and (3) the difference between the punitive damages award and the civil and criminal penalties authorized or imposed in comparable cases." *Chavarria*, 2006-NMSC-046, ¶ 36 (citing *Aken*, 2002-NMSC-021, ¶ 20).

**{32}** The first and most important guidepost we apply is the severity or reprehensibility of the defendant's conduct. *Id.* ¶ 37; *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) (citing *Gore*, 517 U.S. at 575). The relevant factors in making this determination—the type of harm inflicted; whether the conduct was repeated or isolated; and whether the harm was intentionally malicious, misleading, or deceitful, or merely accidental in nature, *Campbell*, 538 U.S. at 419 (citing *Gore*, 517 U.S. at 576-77)—are all present in this case.

**{33}** The facts in this case demonstrate that the Union's failure to represent Plaintiff was particularly reprehensible. As we have stated above, Plaintiff was the only African-American in his Union, and he neither spoke nor understood Spanish. Despite this, his coworkers refused to speak English in his presence, and Plaintiff's supervisor provided instructions predominantly in Spanish that were likewise incomprehensible to him. Plaintiff's coworkers repeatedly referred to him as a "pinche miyate," which in Spanish translates to "fucking nigger." When Plaintiff complained to the Union and asked that a grievance be filed, the Union president informed Plaintiff that he "needed to learn to speak Spanish" and that he was "the wrong color." Furthermore, although the specific harm caused to Plaintiff was singular—the other breach of the DFR having been dismissed on summary judgment grounds—the conduct that precipitated the harm was repeated in nature. Only after his coworkers had repeatedly referred to him using racial epithets did he seek redress through the Union's grievance system. Similarly, Plaintiff's coworkers and supervisor had refused to use English in his presence for some time prior to his complaint. Finally, the Union president's reply to Plaintiff's complaint both compounded the racist insult and indicated the intentional nature of the Union's refusal to represent Plaintiff. The display of such racial animus is always inexcusable, but in the context of a union's duty of fair representation it is particularly so. *See Jolley v. Energen Res. Corp.*, 2008-NMCA-164, ¶ 38, 145 N.M. 350, 198 P.3d 376 (holding that punitive damages may properly reflect the degree of reprehensibility of the defendant's conduct).

**{34}** Second, we must consider the ratio of punitive damages to compensatory damages. *Chavarria*, 2006-NMSC-046, ¶ 38; *Aken*, 2002-NMSC-021, ¶ 23. This criterion "represents a different vantage point on the punitive damages award, and considers the plaintiff's injury." *Aken*, 2002-NMSC-021, ¶ 23. "[I]n New Mexico, where there is no rational

11

relationship between the alleged acts [of the defendant] and the amount . . . sought in punitive damages, the award may be found excessive." *Id.* (second and third alterations in original) (internal quotation marks and citation omitted). However, the general rule in New Mexico is that a punitive damages award can be justified "even when supported only by an award of nominal damages." *Sanchez v. Clayton*, 117 N.M. 761, 767, 877 P.2d 567, 573 (1994).

**{35}** We note that the United States Supreme Court has repeatedly refused to embrace an absolute rule on a proper ratio for punitive damages awards. In *Campbell*, the Court made its position explicit. "We decline again to impose a bright-line ratio which a punitive damages award cannot exceed." *Campbell*, 538 U.S. at 425. Nevertheless, the Court has outlined rough limits. In *Gore*, it invalidated a ratio of 500 to 1, and in *Campbell*, it struck down a ratio of 145 to 1. *Campbell*, 538 U.S. at 426 (holding that "we have no doubt that there is a presumption against an award that has a 145-to-1 ratio"); *Gore*, 517 U.S. at 582-83. Similarly in *Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1, 23-24 (1991), the Court stated that a ratio of 4 to 1 "[did] not cross the line into the area of constitutional impropriety."

**{36}** New Mexico has also refused to set an absolute limit on the ratio for a punitive damages award. As the New Mexico Supreme Court held in *Chavarria*, "the relationship between punitive and compensatory damages is but one of the factors we consider in assessing the constitutionality of a punitive damages award." *Chavarria*, 2006-NMSC-046, ¶ 36. Assessing the ratio of punitive damages to compensatory damages is "a somewhat imprecise inquiry." *Bogle*, 2005-NMCA-024, ¶ 35. Courts must conclude that the amount of punitive damages is related to the injury and does not "manifest passion and prejudice rather than reason or justice." *Aken*, 2002-NMSC-021, ¶ 23 (quoting *Chavez-Rey v. Miller*, 99 N.M. 377, 379, 658 P.2d 452, 454 (Ct. App. 1982)); *Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 53, 127 N.M. 47, 976 P.2d 999 (same).

**{37}** Plaintiff was awarded $1,661.60 in compensatory damages and $30,000.00 in punitive damages, resulting in a ratio of approximately 18 to 1. Admittedly, such a ratio analyzed in isolation from the facts might seem to enter "into the area of constitutional impropriety." *See Haslip*, 499 U.S. at 23-24. But as we stated above, these inquiries are by their nature imprecise, having no rigid benchmarks. We rely, then, on the maxim that punitive damages are appropriate even in the absence of an award of compensatory damages when "the conduct of the wrongdoer warrants [it] in order to deter clearly unacceptable behavior." *Madrid v. Marquez*, 2001-NMCA-087, ¶ 3, 131 N.M. 132, 33 P.3d 683. Because of the reprehensible nature of the Union's conduct and the presence of racial animus, we hold that the ratio in this case "comport[s] with due process" as in *Chavarria*. Our Supreme Court could have been writing about the instant case when it stated: "Given the truly reprehensible behavior in this case, the relatively low compensatory damage award, and the intangible nature of the harm that [the plaintiff] suffered, we believe that a substantial punitive damages award was appropriate." *Chavarria*, 2006-NMSC-046, ¶ 38.

12

**{38}** The final criterion we consider in reviewing the reasonableness of punitive damages is the difference between the punitive damages award and the civil and criminal penalties authorized or imposed in comparable cases. *Id.* ¶ 36. This "third guidepost has been criticized as ineffective and very difficult to employ." *Aken*, 2002-NMSC-021, ¶ 25. We note that racial discrimination cases arising under Title VII and other statutes have allowed for punitive damages in excess of $30,000.00, but such penalties are of little assistance in a breach of the DFR case. Here, as in other instances where *Gore*'s third guidepost has been treated, a survey of civil and criminal penalties is of little assistance in conceptualizing the harmful conduct at issue. Because of our analysis of the first two guideposts, we refuse to upset the jury's finding of punitive damages in this case. The district court's refusal to reduce punitive damages was thus not erroneous.

**4.     District Court's Rulings on Plaintiff's Emotional Distress Theory**

**{39}** On cross-appeal, Plaintiff claims the district court committed reversible error by not allowing evidence of emotional distress as a result of racial discrimination at his job with the City of Carlsbad and refusing to give an emotional distress instruction to the jury. We address each in turn.

**A.     Exclusion of Evidence of Emotional Distress**

**{40}** We review a district court's decision to admit or exclude evidence for abuse of discretion. *Coates*, 1999-NMSC-013, ¶ 36. The appellate court presumes that the district court is correct and that the burden is on the appellant to clearly demonstrate the district court's error. *Farmers, Inc., v. Dal Mach. & Fabricating, Inc.*, 111 N.M. 6, 8, 800 P.2d 1063, 1065 (1990). "The determination of relevancy, as well as materiality, rests largely within the discretion of the [district] court." *Griffin v. Guadalupe Med. Ctr., Inc.*, 1997-NMCA-012, ¶ 14, 123 N.M. 60, 933 P.2d 859. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Apodaca*, 118 N.M. 762, 770, 887 P.2d 756, 764 (1994) (internal quotation marks and citations omitted).

**{41}** The district court's decision to exclude evidence of emotional distress in this case cannot be characterized as "clearly untenable or not justified by reason." *Id.* A cause of action for intentional infliction of emotional distress against a labor union must involve acts or omissions of agents or officials of the union. *Witt v. Roadway Express*, 136 F.3d 1424, 1431 (10th Cir. 1998). In his original complaint, Plaintiff alleged that his supervisor and coworkers intentionally caused him emotional distress when they racially derided him and spoke to him in Spanish. The district court dismissed Plaintiff's claim on an order of summary judgment, finding that Plaintiff presented no evidence that his supervisor or coworkers were either agents or officials of Defendant Union. Having dismissed Plaintiff's cause of action for emotional distress, the district court refused to admit evidence of emotional distress damages. Its decision was not clearly untenable. Had Plaintiff alleged

13

that the actions of the Union president or some other official were the cause of his emotional distress, our decision today might be different. Instead, Plaintiff's complaint claims that the intentional infliction of emotional distress perpetrated by his supervisor and coworkers was "fostered" and "sanctioned" by the Union. The district court determined that under these facts summary judgment should be granted to the Union, and Plaintiff does not argue the propriety of this order, choosing instead to argue the issues of evidence and jury instructions. Having granted summary judgment on the matter, the district court did not abuse its discretion in refusing to retry the issue. We affirm the decision of the district court.

**1. District Court's Refusal to Tender Emotional Distress Jury Instruction**

**{42}** "'The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo.'" *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 (quoting *State v. Gaines*, 2001-NMSC-036, ¶ 4, 131 N.M. 347, 36 P.3d 438)). If a legal theory is supported by the evidence, a party is entitled to have the jury instructed on that theory. *Thompson Drilling, Inc. v. Romig*, 105 N.M. 701, 705, 736 P.2d 979, 983 (1987). We have concluded that the district court properly dismissed the issue of emotional distress on summary judgment. Accordingly, its refusal to give an instruction on emotional distress was proper and we affirm.

**CONCLUSION**

**{43}** For the foregoing reasons, we affirm the decision of the district court in applying the four-year statute of limitations to Plaintiff's claim through our holding that the six-month statute of limitations in the PEBA is not retroactive. Likewise, we affirm the district court's awards of both compensatory and punitive damages, its decision to exclude evidence of emotional distress damages at trial, and its refusal to give a jury instruction on intentional infliction of emotional distress.

**{44} IT IS SO ORDERED.**

                              **RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

**JAMES J. WECHSLER, Judge**

**MICHAEL E. VIGIL, Judge**

**Topic Index for *Akins v. United Steel Workers of America*, No. 27,132**

CR                    CIVIL RIGHTS

| | |
|---|---|
| CR-RD | Racial Discrimination |
| **EL** | **EMPLOYMENT LAW** |
| EL-CB | Collective Bargaining |
| EL-GR | Employee Grievances |
| EL-LU | Labor Unions |
| EL-SL | Statute of Limitations |
| **FL** | **FEDERAL LAW** |
| FL-PE | Pre-emption |
| **GV** | **GOVERNMENT** |
| GV-PE | Public Employees |
| **RE** | **REMEDIES** |
| RE-PU | Punitive Damages |
| **TR** | **TORTS** |
| TR-ED | Emotional Distress, Infliction of |
| TR-PF | Prima Facie Tort |
| TR-PE | Public Employee Torts |