**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2019-NMCA-040

Filing Date: April 25, 2019

NO. A-1-CA-35888

**LOS ALAMOS NATIONAL BANK,**

Plaintiff-Appellee,

**v.**

**GEORGE P. VELASQUEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sarah M. Singleton, District Judge**

Certiorari Denied, August 5, 2019, No. S-1-SC-37688. Released for Publication September 3, 2019.

Scott & Kienzle, P.A.
Duncan Scott
Albuquerque, NM

for Appellee

Jay Goodman & Associates Law Firm, P.C.
Vanessa L. DeNiro
Santa Fe, NM

for Appellant

**OPINION**

**M. ZAMORA, Chief Judge.**

**{1}** Defendant George P. Velasquez (Homeowner) appeals the district court's order granting in rem summary judgment in favor of Plaintiff Los Alamos National Bank (LANB) in this mortgage foreclosure action. On appeal, Homeowner argues that the district court erred in granting summary judgment because LANB failed to establish that it had standing to enforce Homeowner's note at the time it filed its complaint. Homeowner also argues that the district court erred by permitting LANB, as servicer of

the loan, to enforce the note. We conclude LANB had standing to enforce the note, as holder and loan servicer, at the time the complaint for foreclosure was filed and therefore affirm. We need not address Homeowner's remaining issue.

**BACKGROUND**

**{2}**     The following facts are undisputed. In March 2007 Homeowner executed a promissory note in favor of LANB for $273,000, secured by a mortgage. A few years later, Homeowner entered into a home affordable modification agreement with LANB to avoid defaulting on the mortgage. In March 2011 Homeowner defaulted by failing to make payments on the note when due.

**{3}**     On August 23, 2011, LANB filed a complaint for foreclosure against Homeowner. Attached to the complaint was an unindorsed note bearing a statement stamped on the top of the first page by "Title Guaranty & Ins. Co." certifying that it was a true and correct copy of the original note. LANB also attached a copy of Homeowner's mortgage to the complaint.

**{4}**     On February 5, 2012, the district court entered a default judgment in favor of LANB based on Homeowner's failure to answer, and LANB subsequently filed a notice of sale. Shortly thereafter, and before the scheduled sale took place, Homeowner filed for voluntary Chapter 7 bankruptcy in the United States Bankruptcy Court. Within Homeowner's bankruptcy proceedings and on his Schedule D (Creditors Holding Secured Claims), he listed LANB as a secured creditor based on its mortgage, which he valued at $300,000. On March 22, 2012, seven months after it filed its complaint, LANB deposited the original note, indorsed in blank (the indorsed note), with the district court. Absent from this note was the stamped statement from the title company certifying that it was a true and correct copy.

**{5}**     On June 7, 2012, Homeowner filed a motion to set aside the default judgment, requesting proof that LANB was the proper party to foreclose on the mortgage at the time the complaint was filed. Homeowner argued that his failure to timely answer was excusable neglect under Rule 1-060(B)(1) NMRA and raised the defense of standing. Homeowner also attached a document printed from the Federal National Mortgage Association (Fannie Mae) website indicating that Fannie Mae owned Homeowner's loan, and argued at the motion hearing that LANB had "some explaining to do about where the note went" and how it came to "get [the note] back." The district court found that Homeowner satisfied the requirements of Rule 1-060(B), and set aside the default judgment. Homeowner then filed his answer and raised various affirmative defenses, only one of which is relevant to this appeal: LANB lacks standing to enforce the note and foreclose on the mortgage.

**{6}**     LANB filed three motions for in rem summary judgment. In its first motion, LANB asserted it was entitled to summary judgment because it was the holder of the note and Homeowner was in default. The district court denied LANB's first motion for in rem summary judgment because it did not address Homeowner's affirmative defenses.

**{7}** In its second motion for in rem summary judgment, LANB included its responses to Homeowner's affirmative defenses and maintained that it could enforce the note because it was the holder. In support of this second motion, LANB attached an affidavit from Jamie Gallegos (the Gallegos affidavit), a loss mitigation specialist at LANB. Gallegos detailed the procedural background of Homeowner's loan and then stated, "[LANB] is the holder of the [n]ote and [m]ortgage." In LANB's reply, it attached an affidavit by Jane Finch (the first Finch affidavit), the LANB loan administrative officer who placed the indorsement on the note. Finch explained that LANB began the process to obtain the original, indorsed note from Fannie Mae twenty-nine days before the complaint was filed. She stated that upon receiving it from Fannie Mae, LANB delivered the original indorsed note to LANB's previous counsel, the Little Law Firm, on August 5, 2011, eighteen days before the foreclosure complaint was filed. Attached to the first Finch affidavit were three exhibits: (1) an e-mail from Jonathan LeDuc of LANB's legal department requesting the original note memorializing Homeowner's loan from Fannie Mae for judgment and foreclosure purposes; (2) a letter from Jonathan LeDuc to the Little Law Firm enclosing the original note for Homeowner's loan; and (3) a Federal Express air bill receipt from Jonathan LeDuc to the Little Law Firm stamped received on August 5, 2011. LANB additionally argued in its reply that Homeowner is judicially estopped from challenging LANB's standing because he acknowledged that LANB was a secured creditor during the course of his bankruptcy proceedings.

**{8}** At the hearing on LANB's second motion for in rem summary judgment, Homeowner argued:

> Opposing counsel states that he has evidence that [LANB] held the note at the time [of] the filing of the complaint, but I don't see that evidence. The exhibit, which I would object to, to admit into court, is hearsay. And it is basically just a cover letter stating that it has the original note, but a copy of the note is not even attached to it.

LANB did not respond to Homeowner's hearsay claim, but instead focused most of its argument on Fannie Mae's interest in the loan. At the conclusion of the January 25, 2016 hearing, the district court ordered:

> [Our New Mexico case law requires that LANB] show it was the holder at the time it filed its complaint, which can be done by all kinds of evidence, including a person who has first-hand knowledge, including copies of business records that would show that that is the case. So I'm not going to preclude the bank from relying on evidence, such as Ms. Finch's affidavit, in conjunction with the business records, that would show the Federal[]Expressing of the original note to the law firm at the time of the filing of the complaint.

Nevertheless, the district court denied the second motion for in rem summary judgment because it found that Homeowner had offered evidence that Fannie Mae, at least at some point in time, had an interest in the note, and therefore summary judgment was

not appropriate until evidence was submitted that Fannie Mae no longer had an interest in the note.

{9}    In LANB's third motion for in rem summary judgment, it clarified Fannie Mae's role in the underlying transaction, explaining that Fannie Mae "owns" the mortgage loan and LANB is the "servicer" of the mortgage loan and attaching the affidavit of John Curcio, Assistant Vice President for Fannie Mae (the Curcio affidavit), substantiating this relationship. Attached to the Curcio affidavit was a loan detail from Fannie Mae's Servicer & Investor Reporting platform, providing information regarding mortgage loans acquired and owned by Fannie Mae. Curcio explained that the loan detail reflects the acquisition and history of Homeowner's loan, establishing that Fannie Mae owns the mortgage in the present case and that LANB is the loan servicer. Nevertheless, LANB argued, it had standing to enforce the note based on its status as the servicer of the mortgage and as the holder of the note. In response, Homeowner again contended that the note and mortgage cannot properly be enforced by LANB because it is not the "true owner" of the note and therefore does not have authority to enforce the note. Notably, Homeowner did not dispute any of the material facts set forth in LANB's second motion for in rem summary judgment and reply, and the facts were further incorporated by reference into LANB's third in rem motion for summary judgment. In LANB's reply, it attached a second affidavit by Finch (the second Finch affidavit), this time explaining the procedures followed by LANB in servicing Fannie Mae loans. According to the second Finch affidavit, immediately following the closing, the title company sends LANB a pre-closing copy of the original note, which is marked as a true and correct copy of the original. After and apart from the closing, the title company also delivers the original note to LANB. Upon LANB's receipt of Homeowner's original signed note in this case, Finch personally indorsed it, and recalls doing so within approximately thirty days or so of the closing, a time period consistent with her typical practice. Therefore, Finch explained, the indorsed note is not stamped by the title company because it is the original, not a copy. LANB also cited to an American Bar Association article, Dale Whitman, *The "Person Entitled to Enforce": Lessons Learned from BAC Home Loans Servicing v. Kolenich*, https://www.americanbar.org/content/dam/aba/publishing/rpte_ereport/2012/6_december/rp_articles.pdf, to explain the working arrangement between Fannie Mae and LANB and to refute Homeowner's argument that he could be subject to multiple lawsuits. *See id.* (stating that at the time of foreclosure "Fannie Mae normally delivers possession of the note to its servicer becoming the holder or [person entitled to enforce], while Fannie Mae remains the owner, and will have the right to the proceeds of foreclosure").

{10}    The district court determined that LANB had met its evidentiary burden to establish that it was the holder of the note on the date the complaint was filed, as required by NMSA 1978, Section 55-3-301 (1992), and that LANB's evidence concerning its relationship with Fannie Mae was sufficient to set forth the basis of LANB's entitlement to enforce the note. As a separate and additional ground for summary judgment, the district court applied the doctrine of judicial estoppel against Homeowner based on the position taken by him in the bankruptcy proceedings. The district court accordingly granted LANB's third motion for in rem summary judgment and

concurrently entered a separate judgment and order of foreclosure. Homeowner appeals.

## DISCUSSION

### Standard of Review

**{11}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted). "We review issues of law de novo." *Id.* "The movant need only make a prima facie showing that he is entitled to summary judgment. Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Id.* (internal quotation marks and citation omitted).

**{12}** "We review a district court's decision to admit or exclude evidence for abuse of discretion." *Akins v. United Steelworkers of Am.*, 2009-NMCA-051, ¶ 40, 146 N.M. 237, 208 P.3d 457. "The determination of relevancy . . . rests largely within the discretion of the district court." *Id.* (alteration, internal quotation marks, and citation omitted). "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 11, 314 P.3d 688 (internal quotation marks and citation omitted).

### LANB Has Standing to Enforce the Note

**{13}** Homeowner argues that summary judgment was improper because LANB failed to demonstrate that it came into possession of the note before filing its complaint, and therefore lacked standing to enforce the note. *See Deutsche Bank Nat'l Trust Co. v. Johnston*, 2016-NMSC-013, ¶ 20, 369 P.3d 1046 (stating that standing must be established as of the date the suit was filed in mortgage foreclosure actions). Homeowner points out that LANB failed to produce the indorsed note until six months after filing the complaint and that it was undated. Therefore, the compelling issue is whether LANB made a prima facie showing supported by admissible evidence that it was the holder of the note *at the time it filed* the complaint for foreclosure on August 23, 2011.

**{14}** Possession of the original, indorsed note at the time of filing of the complaint is required to establish standing in this case. *See PNC Mortg. v. Romero*, 2016-NMCA-064, ¶ 23, 377 P.3d 461 ("In general, a person or entity in possession of a bearer instrument is considered a holder, and a holder of a bearer instrument is entitled to enforce its terms."). Prudential rules of standing apply in mortgage foreclosure cases in New Mexico and require litigants to demonstrate "injury in fact, causation, and redressability to invoke the [district] court's authority to decide the merits of a case." *Johnston*, 2016-NMSC-013, ¶ 13 (internal quotation marks and citation omitted). To effectively show a direct and concrete injury, a party seeking to enforce a promissory

note must establish that it has the right to enforce the note under the New Mexico Uniform Commercial Code (UCC). *Id.* ¶ 14; *see also* § 55-3-301. The UCC identifies three scenarios in which a person is entitled to enforce a promissory note: "(1) when that person is the holder of the instrument; (2) when that person is a non-holder in possession of the instrument who has the rights of a holder; and (3) when that person does not possess the instrument but is still entitled to enforce it subject to the lost-instrument provisions of UCC Article 3." *Johnston*, 2016-NMSC-013, ¶ 14.

**{15}** LANB argues that it was the holder of the note. A "holder" is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]" NMSA 1978, § 55-1-201(b)(21)(A) (2005). Here, the note was indorsed without identifying a bearer, and was therefore indorsed in blank and payable to the bearer. *See* NMSA 1978, § 55-3-205(b) (1992) ("If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer[.]"); *Bank of New York v. Romero*, 2014-NMSC-007, ¶ 24, 320 P.3d 1 ("A blank indorsement, as its name suggests, does not identify a person to whom the instrument is payable but instead makes it payable to anyone who holds it as bearer paper."), *abrogated on other grounds as recognized by Romero*, 2016-NMCA-064. "Under the UCC, possession of a note properly indorsed in blank establishes the right to enforce that note." *Lopes*, 2014-NMCA-097, ¶ 12.

**{16}** In evaluating LANB's status as holder of the note, we look for guidance in *Johnston*, in which our Supreme Court gave two examples of how a party claiming to be a holder can establish that it was in possession of the note prior to the commencement of a foreclosure action: (1) by "attaching a note containing an undated indorsement to the initial complaint," or (2) by "producing a note dated before the filing of the complaint at some appropriate time in the litigation." 2016-NMSC-013, ¶ 23. Inasmuch as the indorsed note here under consideration was neither attached to the initial complaint nor dated, this case does not fall into either of the two examples identified in *Johnston*. Our task, then, is to determine whether other evidence exists to establish that LANB had possession of the note at the time it filed the complaint. *See Romero*, 2016-NMCA-064, ¶¶ 24, 28 (discussing that mere production of the indorsed note was insufficient to prove standing at the time the complaint was filed, and the "successor in interest seeking to establish its right to foreclose [must] provide some evidence of a proper indorsement or transfer").

**{17}** On this score, LANB produced separate affidavits from Ms. Finch, the loan administrator of Homeowner's account who had personal knowledge about the note's chain of title, which show that LANB's legal counsel had possession of the indorsed note when the complaint was filed. These affidavits and accompanying exhibits were sufficient to establish a prima facie showing that LANB was the holder in possession of the note at the time the complaint was filed, thereby shifting the burden to Defendant to show that there is a genuine issue of material fact for trial.

**{18}** Homeowner's response to LANB's motion for in rem summary judgment did not dispute any of the material facts asserted in the motion, nor did it include an affidavit or other evidence to rebut LANB's prima facie showing. Instead, Homeowner argued that the differences between the note attached to the complaint and the original indorsed note submitted six months later are sufficient on their face to establish the existence of a disputed issue of material fact. On appeal, Homeowner contends that LANB failed to demonstrate through competent evidence that it possessed the right to enforce the note at the time it filed the complaint. Specifically, Homeowner argues: (1) the first Finch affidavit improperly relied on hearsay documents and lacked personal knowledge, and (2) the Gallegos affidavit stated legal and conclusory opinions. Significantly, however, Homeowner did not move to strike either affidavit or any purportedly inadmissible exhibits. *See Chavez v. Ronquillo*, 1980-NMCA-069, ¶ 20, 94 N.M. 442, 612 P.2d. 234 ("A party must move to strike an affidavit that violates Rule [1-056(E) NMRA].") "If counsel do[es] not object to inadmiss[i]ble matters the court may consider them on the motion for summary judgment." *Id.* (alteration, internal quotation marks, and citation omitted). Accordingly, we conclude that Homeowner did not preserve any issue regarding the admissibility of the affidavits and exhibits for appeal.

**{19}** Homeowner's only objection to the competency of LANB's evidence came at the hearing on the second summary judgment motion, during which Homeowner's counsel stated: "The exhibit, which I would object to, to admit into court, is hearsay. And it is basically just a cover letter stating that it has the original note, but a copy of the note is not even attached to it." The exhibit consisted of the first Finch affidavit with three documents attached. Homeowner is not clear as to which exhibit he was referring to at the hearing. The district court characterized the exhibit as an affidavit with business records attached, and thus viewed it as admissible evidence. On appeal, Homeowner does not develop his argument that the attached documents did not fall within the business records hearsay exception. We therefore decline to consider this argument further because this Court "will not review unclear arguments, or guess at what . . . arguments might be." *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076; *see also State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (explaining that appellate courts are under no obligation to review unclear or undeveloped arguments). Moreover, Homeowner does not point us to where in the record he sought to strike the first Finch affidavit. *See Romero*, 2016-NMCA-064, ¶ 30 (giving "little weight to [an] appellate attack" on the admissibility of an affidavit because the defendants did not cite to where in the record they sought to strike it); *Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue."). "It is the duty of the appellant to provide a record adequate to review the issues on appeal." *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 65, 146 N.M. 853, 215 P.3d 791. Without a motion to strike the affidavit or clear argument about the hearsay exhibit, we cannot say the district court erroneously considered the first Finch affidavit and its corresponding exhibits.

**{20}** LANB thus established through competent evidence that it possessed the indorsed note at the time it filed the complaint, and Homeowner offered nothing of substance to rebut this evidence. *See Lopes*, 2014-NMCA-097, ¶ 6 ("Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." (internal quotation marks and citation omitted)). While it undoubtedly would have been the better practice for LANB to have attached the indorsed note to the complaint, we acknowledge that such requirement was not clearly articulated in our case law until some years after the complaint was filed in the present case. *See Romero*, 2016-NMCA-064, ¶ 26 (recognizing that the test for establishing standing in foreclosure actions has "evolved dramatically" in recent years). As Defendant has failed to show that a genuine issue of material fact exists on the issue of LANB's status as the holder of the note, we hold that LANB, as holder, had standing to enforce the note and foreclose the mortgage and, accordingly, affirm the district court.

**LANB's Loan Servicer Status Does Not Bar Its Enforcement of the Note**

**{21}** Homeowner next argues that LANB cannot enforce the note because its role as a loan servicer does not establish a specific interest in the note or mortgage and because Fannie Mae still owns and maintains an interest in the note. Homeowner contends that without a transfer of interest from Fannie Mae to LANB, LANB has no standing to enforce the note, notwithstanding its possession of the note indorsed in blank. Homeowner's argument raises an issue of first impression as to whether a loan servicer has standing to enforce a note owned by another entity, one which is not a party to the foreclosure action. *Cf. id.* ¶ 15 n.2 (finding issues of fact regarding the plaintiff's standing to enforce an indorsed note, without addressing the plaintiff's apparent status as a loan servicer). We conclude that a loan servicer with authority, either statutorily or contractually, may properly enforce a note owned by another who is not a party to the foreclosure action. As LANB made a prima facie case that it was the holder of the note, it demonstrated its authority, pursuant to the UCC, to enforce the note and the district court did not err when it allowed it do to so.

**{22}** A loan servicer is generally "responsible for processing payments and supervising any resulting foreclosure or workout." *Id.* (internal quotation marks and citation omitted). The Mortgage Loan Company Act, NMSA 1978, §§ 58-21-1 to -32 (1983, as amended through 2009), defines a servicer as

> a person who collects or receives payments, including principal, interest and trust items such as hazard insurance, property taxes and other amounts due, on behalf of a note holder or investor in accordance with the terms of a residential mortgage loan, and includes working with a borrower on behalf of a note holder or investor, when the borrower is in financial hardship or default, to modify either temporarily or permanently the terms of an existing mortgage loan.

Section 58-21-2(N).

**{23}**     Other jurisdictions have analyzed the issue of whether loan servicers having no ownership interest in a promissory note can assert standing to enforce the note and have uniformly held that a loan servicer may enforce a note so long as it has authority to do so. *See Bankers Trust (Delaware) v. 236 Beltway Inv.*, 865 F. Supp. 1186, 1191 (E.D.Va. 1994) (holding that both the servicer and owner of a promissory note had authority to sue to enforce the note); *Arabia v. BAC Home Loans Servicing, L.P.*, 145 Cal. Rptr. 3d 678, 686 (Ct. App. 2012) (concluding that a loan servicer may initiate a foreclosure action in its own name so long as the servicer has been assigned the right to foreclose). Cases from jurisdictions that have considered the question conclude that the authority to enforce a note generally stems from a statutory right to do so found in the UCC, though some courts have found the basis of the right arises from the pooling and servicing agreement between the loan servicer and the owner of the note. *See J.E. Robert Co. v. Signature Prop, LLC*, 71 A.3d 492, 499-501 (Conn. 2013) (concluding that a loan servicer with authority has standing to enforce a note, surveying other jurisdictions and recognizing that some jurisdictions derive that authority from the UCC while others derive that authority from pooling and servicing agreements).

**{24}**     In this case, we have already concluded that LANB was the holder of the note, as it provided evidence that on the day it filed its complaint for foreclosure, it was in possession of the original note, which had been indorsed in blank a few days after it was executed by Homeowner. *See* § 55-1-201(b)(21)(A) (defining "holder" in pertinent part as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession"). As the "holder," LANB is among those entities authorized by statute to enforce the note, notwithstanding the fact that it does not "own" the note. *See* § 55-3-301 (stating that a " '[p]erson entitled to enforce' an instrument means . . . the holder of the instrument").

**{25}**     Other jurisdictions have reached similar conclusions. In *Central Mortgage Co. v. Davis*, 149 A.D.3d 898, 899 (N.Y. App. Div. 2017), the defendant challenged the loan servicer's standing to foreclose, and the court held that the servicer had standing to prosecute "by virtue of its possession of the note at the time of the commencement of th[e] action." The court held that by submitting the note indorsed in blank, the loan servicer demonstrated that it was a holder under New York's version of the UCC. *Id.* at 899-900. The court explained that "a plaintiff that has possession of the note has standing to foreclose, even where, as here, the plaintiff is the servicer, not the owner, of the mortgage loan." *Id.* at 899.

**{26}**     Our appellate courts' treatment of Mortgage Electronic Registration Systems' (MERS) right to enforce notes it manages is also instructive to our analysis. MERS is an electronic registry for tracking the servicing rights and beneficial ownership interests in mortgage loans throughout the United States. 125 Am. Jur. *Trials* 541 § 8 (2012, updated 2019). Our Supreme Court has held that a MERS assignment of a mortgage is valid if MERS is designated as the nominee on a mortgage contract. *Romero*, 2014-NMSC-007, ¶ 35; *see also Flagstar Bank, FSB v. Licha*, 2015-NMCA-086, ¶ 17, 356 P.3d 1102 (concluding that MERS had authority to assign a mortgage, where MERS' role as nominee for lender and lender's successors and assigns was clear from the face

of the mortgage), *abrogated on other grounds by Romero*, 2016-NMCA-064, ¶ 18. Similar to MERS' authority to assign a mortgage when authorized, loan servicers can enforce a note when authorized. Guided by the reasoning employed by other jurisdictions in recognizing the right of a loan servicer to enforce a note, as well as our rationale in allowing MERS to act on behalf of the owner of a note, we hold that a loan servicer may properly enforce a note even without an ownership interest in the note, provided it has authority to do so.

**{27}**    Having established that LANB's role as a loan servicer provided an independent basis for its standing to maintain this action, we turn next to consider Homeowner's arguments challenging the admissibility of LANB's affidavits addressing LANB's servicing relationship with Fannie Mae. *See* Rule 1-056(E) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). Curcio, the assistant vice president for Fannie Mae, explained in his affidavit that Fannie Mae acquired ownership of the mortgage loan and "remains the owner[,]" while LANB is the loan servicer. Homeowner argues, as he did below, that the Curcio affidavit should be stricken because its relevance is somehow diminished by the fact that Fannie Mae is not a party to the present case. Homeowner did not cite any authority for this proposition, and we assume no such authority exists. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel[,] after diligent search, was unable to find any supporting authority."). Nevertheless, we disagree with Homeowner's premise, since Curcio's affidavit was clearly relevant to establish that Fannie Mae was the owner of the loan and LANB was the loan servicer. *See* Rule 11-401(A) NMRA (Relevant evidence is evidence having "any tendency to make a fact more or less probable than it would be without the evidence."); *McNeill v. Burlington Res. Oil & Gas Co.*, 2008-NMSC-022, ¶ 14, 143 N.M. 740, 182 P.3d 121 ("Whatever naturally and logically tends to establish a fact in issue is relevant." (alteration, internal quotation marks, and citation omitted)). Thus, the district court did not abuse its discretion in considering the Curcio affidavit.

**{28}**    Homeowner also argues that the second Finch affidavit fails to demonstrate personal knowledge sufficient to address the issue of LANB's servicing arrangement with Fannie Mae. However, our review of the record reveals that Homeowner did not object to the admissibility of the second Finch affidavit below, and thus, his present argument is not preserved. *See* Rule 12-321 NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."); *Chavez*, 1980-NMCA-069, ¶ 20 ("A party must move to strike an affidavit that violates [Rule 1-056(E)].").

**{29}**    We need not reach Homeowner's argument that Fannie Mae failed to reassign or transfer the indorsed note to LANB, in light of our holding that LANB was the holder of the note and therefore a "person entitled to enforce" the note pursuant to Section 55-3-301. Finally, since we affirm the grant of summary judgment in favor of LANB based on the ground discussed above, it is unnecessary to address the issue of judicial estoppel

as an alternative basis for affirmance. *See Porter v. Robert Porter & Sons, Inc.*, 1961-NMSC-010, ¶ 18, 68 N.M. 97, 359 P.2d 134 (stating that our appellate courts "will not make useless orders nor grant relief that will avail appellant nothing").

**CONCLUSION**

**{30}** For the aforementioned reasons, we affirm the district court's grant of summary judgment in favor of LANB.

**{31}   IT IS SO ORDERED.**

**M. MONICA ZAMORA, Chief Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**MEGAN P. DUFFY, Judge**