IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:  2011-NMCA-027

Filing Date:  February 7, 2011

Docket No. 29,085

COUNTY OF LOS ALAMOS,

  Plaintiff-Appellant,

v.

JOHN PAUL MARTINEZ and
MICHAEL DICKMAN,

  Defendants,

ROBBIE STIBBARD, as President of the
Los Alamos Firefighters Association Local #3279,

  Appellee.

APPEAL FROM THE DISTRICT COURT OF LOS ALAMOS COUNTY
Daniel A. Sanchez, District Judge

Mary McInerny, County Attorney
Los Alamos, NM

Charles Rennick, LLC
Santa Fe, NM

for Appellant



Hinkle, Hensley, Shanor & Martin, LLP
S. Barry Paisner
Santa Fe, NM

for Appellee

**OPINION**

**VANZI, Judge.**

**{1}**     In this appeal, we review the district court's order denying Plaintiff's, County of Los Alamos (County), motion for summary judgment and granting Intervenor's, Los Alamos Firefighters Association Local #3279 (Union), cross-motion for summary judgment. The district court determined that paramedic training contracts are subjects of mandatory bargaining and that the County may not unilaterally enter into such contracts with Union members without including the Union in its negotiations. For the reasons that follow, we affirm the decision of the district court.

**BACKGROUND**

**{2}**     Defendants John Paul Martinez and Michael Dickman (Defendants) were employees of the Los Alamos County Fire Department and members of the Union. Defendants were accepted to participate in a voluntary paramedic training program at Eastern New Mexico University in Roswell, New Mexico. The County offered contracts to Defendants called housing agreements, which Defendants entered into with the County. The contracts provided that the County would allow Defendants to continue their employment on paid status with full salary while they attended the paramedic training, that it would provide per diem or reimbursement for lodging, meals, and travel, and that it would make a vehicle available to them to drive to and from Roswell.

**{3}**     Defendants agreed that in return they would comply with several provisions in the contract, including maintaining employment as firefighter paramedics with the County for at least two years after completion of the fourteen-month training program. A failure to abide by the terms of the contract could result in disciplinary action up to and including termination. Further, Defendants agreed that if they failed to complete the training or maintain employment with the County as provided by the contract, they would reimburse the County for all expenses incurred by the County associated with the training. The County could, in its sole discretion, waive the reimbursement requirement for good cause shown.

**{4}**     Both Defendants executed a contract with the County, and both completed the paramedic training program. Martinez signed his contract and remained employed with the County for seven months after completing the program. He then voluntarily left his employment without making reimbursement. Dickman signed his contract and remained employed for six months after completing the program. He also voluntarily left his employment without making reimbursement.

**{5}**     The County and the Union were parties to a collective bargaining agreement (CBA) that covered Defendant's bargaining unit, effective January 1, 2004, through December 31, 2005. The CBA contained provisions relating to wages, hours, and terms and conditions of employment. The paramedic training contracts, however, were not covered by the CBA.

**{6}**     In addition to the specific provisions relating to wages, hours, and terms and conditions of employment, the CBA contained a management-rights clause that gave management certain specific operational and policy rights, as well as "all rights not specifically limited by this [CBA]." Finally, the CBA contained a "zipper clause," which provided that the CBA was the "complete and only

agreement between the parties," that all the mandatory subjects of collective bargaining had been "discussed and negotiated upon," and that each party waived the right "to bargain collectively with respect to any subject matter not specifically referred to or covered in [the CBA.]"

{7}     The County filed suit against Defendants for breach of contract and restitution. Some months later, in early 2007, the Union moved to intervene through its President, Robbie Stibbard. The motion was approved in a stipulated order permitting intervention and a complaint was filed. The complaint in intervention requested a declaratory judgment that the paramedic training contracts were void because the issue involved a subject of mandatory bargaining that had not been negotiated with the Union and the contracts were therefore unenforceable.

{8}     The County and the Union subsequently filed motions for summary judgment, and a hearing was held on both motions. After the hearing, the district court granted the Union's motion for summary and declaratory judgment and denied the County's motion for summary judgment. The district court entered an order on the two summary judgment motions as well as a stipulated order dismissing all the remaining claims of the parties. This appeal timely followed.

{9}     The County raises four issues on appeal: (1) the district court erred in granting the Union's motion for summary judgment on the basis that the paramedic training contracts contained terms and conditions of employment that are subjects of mandatory bargaining; (2) the district court erred in denying the County's motion for summary judgment based on the employer's right to negotiate paramedic training contracts pursuant to its management-rights authority; (3) the district court erred in granting the Union's motion for summary judgment insofar as a balancing of interests presents a genuine issue of material fact; and (4) the district court erred in denying the County's motion for summary judgment based on the Union's waiver of bargaining rights set forth in the zipper clause of the CBA. We address the first three issues raised by the County together, and we then turn to its argument relating to waiver under the zipper clause.

## DISCUSSION

### Standard of Review

{10}     "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "An appeal from the grant of a motion for summary judgment presents a question of law and is reviewed de novo." *Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 16, 141 N.M. 21, 150 P.3d 971. "The meaning of language used in a statute is a question of law that we review de novo." *Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61.

### The Paramedic Training Contracts Are Subjects of Mandatory Bargaining

{11}     The threshold question that the County asserts we must address in this case is whether the paramedic training contracts contained terms or conditions of employment such that they are mandatory subjects of collective bargaining that had not been negotiated. Under both NMSA 1978, Section 10-7E-17(A)(1) (2003), of the Public Employee Bargaining Act (PEBA), and the County

2

Labor Management Relations Ordinance (the Ordinance), Los Alamos County, N.M., Code § 30-44(a) (2005), an employer is obligated to bargain in good faith on all wages, hours, and other terms and conditions of employment. Any direct communication with a union-represented employee made for the purpose of altering terms and conditions of employment, therefore, constitutes a violation of the PEBA. *See Permanente Med. Group, Inc.*, 332 N.L.R.B. 1143, 1144 (2000) (noting that direct communications with employees made "for the purpose of establishing or changing wages, hours, and terms and conditions of employment or undercutting the Union's role in bargaining" constitutes improper direct dealing).

{12}    There is no definition of the phrase "wages, hours, and other terms and conditions of employment" in either the PEBA or the Ordinance so as to delineate exactly what constitutes a subject of mandatory bargaining. Thus, the issue of whether the paramedic training contracts are subjects of mandatory bargaining appears to be one of first impression in New Mexico. For the reasons that follow, however, we need not reach that determination today.

{13}    This case was decided on summary judgment. The issues were those raised in the two motions filed by the County and Union. Whether the paramedic training contracts were mandatory subjects of bargaining was not a matter of contention in either of the two summary judgment motions. For the purpose of the motions, the County agreed that the paramedic training contracts were mandatory subjects of bargaining. The Union's summary judgment motion in the district court asserted that the training contracts were mandatory subjects of bargaining and, therefore, were not enforceable. The County responded that, assuming for the purposes of the motion, that the paramedic training contracts were mandatory subjects of bargaining, the contracts were enforceable because of the management-rights clause and because of waiver. The County sought summary judgment on the same basis as that stated in its response to the Union's motion. The district court ruled in the Union's favor, essentially holding that the management-rights and zipper clauses could not override or defeat the County's obligation to engage in collective bargaining on the subject of the paramedic training contracts.

{14}    The County's first argument on appeal is that we should reverse on a ground that was not a part of the summary judgment proceedings, namely, that the paramedic training contracts were not mandatory subjects of bargaining. The County summarizes its issue on appeal as follows:

> The County requests that this Court hold that the training agreements are not terms and conditions of employment and that the management-rights clause be given effect as a matter of law. Alternatively, applying the balancing test, this Court should find that the predominant concern is a matter of public policy, subject to the management-rights clause.

{15}    We will not address the County's contention to the extent that it is based on the argument that the paramedic training contracts were not terms and conditions of employment. *See Spectron Dev. Lab. v. Am. Hollow Boring Co.*, 1997-NMCA-025, ¶ 32, 123 N.M. 170, 936 P.2d 852 ("We review the case litigated below, not the case that is fleshed out for the first time on appeal." (alteration omitted) (internal quotation marks and citation omitted)). The County did not oppose the Union's or Defendants' claims in the district court and seek a trial or judgment on the premise that the paramedic training contracts were not mandatory subjects of bargaining, nor did the County offer any evidence of that question. When arguing the motions for summary judgment, the County

3

conceded that the paramedic training contracts were mandatory subjects of bargaining during the following colloquy between the district court and the County's counsel:

> THE COURT: I do, Mr. Graeser. I recognize, and I understand, that the County's reliance is basically on two issues, one the contractual agreement and the contractual nature of the bargaining agreement. I understand that. The second is the zipper clause. But let me ask you the particular action, and I am not sure what you said, and I thought I wrote it down, but what is your position with respect to the subject of this issue being in the Collective Bargaining Agreement? Is your position that it's a mandatory subject?
>
> MR. GRAESER: Your Honor, certainly for the purpose of this motion I can agree it's a mandatory subjective collective bargaining. I think that's an issue to determine during bargaining for the next contract, but I don't suspect there will be a lot of debate about that.
>
> THE COURT: So you agree that it is a mandatory subject?
>
> MR. GRAESER: Again, in my role of representing the County for the purposes of this case, I will agree to that, yes.

**{16}** In its oral ruling at the conclusion of the hearing on the motions, the district court confirmed—without objection or concern expressed by the County—that "[h]ere we are talking about a mandatory subject of the [CBA], and we all agree that this is a mandatory subject." Neither as a part of its argument in the district court, nor as a follow-up to the foregoing colloquy and oral ruling, did the County suggest to the district court that if the court were to grant the Union's motion and deny the County's motion, the County wanted to proceed to trial to prove that the training contracts were not subjects of mandatory bargaining. "Facts stipulated to are not reviewable on appeal." *Haaland v. Baltzley*, 110 N.M. 585, 587, 798 P.2d 186, 188 (1990).

**{17}** The County's second contention on appeal is that the concept of management- rights and the language and breadth of the management-rights provision provide the legal basis for enforcing the training contracts notwithstanding that the training contracts are mandatory subjects of bargaining. The County argues that this Court should adopt a balancing test, by which the court is to weigh the interests of the employees against those of management. The County then argues that under that balancing of interests test, the district court should have favored management-rights as the predominant interest. We see nothing in the record indicating that the County raised this balancing test in the district court or that the district court considered it, and the County concedes as much. Thus, we will not address this balancing-test argument. *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]"); *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987) (same).

**{18}** We note that in arguing that the management-rights provision should be given effect, the County argues that "the present case does not contain a well-developed record as to the nature of the interests," and that the balancing of interests presents a genuine issue of material fact requiring

4

remand to the district court. For the reason just discussed in regard to the County's preservation failure, and also because the County did not raise this specific ground in the district court, we do not address this argument. *Woolwine*, 106 N.M. at 496, 745 P.2d at 721.

**{19}** Accordingly, the County is left with an argument that the plain language and breadth of the management-rights provision must be given effect notwithstanding that the paramedic training contracts are subjects of mandatory bargaining. The County's argument is antithetical to the very concept of mandatory subjects of bargaining which, by its terms, means that these are subjects about which the parties *must* bargain. *NLRB v. Wooster Div. of Borg-Warner Corp.*, 356 U.S. 342 (1958). We recognize that a union can contractually waive its right to mandatory bargaining if the waiver is expressed clearly and unmistakably. *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 705, 708 (1983). However, courts will not infer a waiver "unless it is clear that the parties were aware of their rights and made the conscious choice, for whatever reason, to waive them." *NLRB v. New York Tel. Co.*, 930 F.2d 1009, 1011 (2d Cir. 1991). In this case, the County has pointed to no clear and unmistakable waiver to bargain over the paramedic training contracts, and we have found none. For summary judgment purposes with regard to both motions for summary judgment, the County assumed that the paramedic training contracts were a mandatory subject of bargaining. Under that assumed fact, the County was foreclosed from unilaterally entering into the contracts with individual union members instead of entering into the bargaining process with respect to the contracts or the work under the contracts. Consequently, we see no error in the district court's summary judgment dispositions.

**The Union Did Not Waive Its Right to Bargain Under the Zipper Clause**

**{20}** The County's remaining argument is that the Union waived any right to bargain based on a broad zipper clause containing waiver provisions in the CBA. The clause provides:

> The parties agree that this is the complete and only agreement between the parties. Each party has negotiated on all issues identified for negotiations and such negotiations have led to this agreement. No additional negotiations will be conducted on any item, whether contained herein or not, except by mutual agreement of the parties. This agreement replaces any and all previous agreements between the parties.
>
> The parties acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to all proper subjects of collective bargaining and that all such subjects have been discussed and negotiated upon and the agreements contained in this Agreement were arrived at after the free exercise of such rights and opportunities; therefore, the [County] and the Union, for the life of this Agreement, each voluntarily and unqualifiedly waives the right and each agrees that the other shall not be obligated to bargain collectively with respect to any subject matter not specifically referred to or covered in this Agreement, even though such subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated or signed this Agreement.

5

**{21}** At the outset, we note that New Mexico courts have not ruled on whether broad zipper clauses in a CBA such as the one before us relieves an employer from the duty to bargain. In the absence of guidance from our own courts, the New Mexico Supreme Court has directed that we should interpret language in the PEBA "in the manner that the same language of the [National Labor Relations Act] has been interpreted." *Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 18, 125 N.M. 401, 962 P.2d 1236.

**{22}** The National Labor Relations Board (NLRB) has taken two approaches when answering the question of whether a zipper clause in a CBA can by its terms eliminate otherwise binding practices.

> Prior to 1974, the [NLRB] strictly applied the rule that only "clear and unmistakable" language in the contract expressly waiving the right to negotiate over a particular subject would suffice to relieve a party of the duty to bargain. This was especially the case with broad "zipper" clauses which stated that the contract was the complete agreement between the parties on all subjects. Such clauses, standing alone, did not constitute a sufficiently clear and unmistakable waiver as to a specific bargaining item.

1 Charles J. Morris, The Developing Labor Law 642 (2d ed. 1983) (footnote omitted).

**{23}** In 1974, the NLRB modified its approach so that the language of broad zipper clauses could, in fact, support a contractual waiver defense. The new standard required zipper clauses to be given "such effect as the negotiating history and other surrounding circumstances seem to make appropriate." *Radioear Corp.*, 214 N.L.R.B. 362, 364 (1974); *see also Aeronca, Inc.*, 253 N.L.R.B. 261, 264 (1980) (noting that a contractual right to have an issue bargained effectively can be waived only on "showing of a clear relinquishment of the right which is to be decided on the facts and circumstances surrounding the making of the contract as well as the language of the contract itself"), *enforcement denied on other grounds by Aeronca, Inc. v. NLRB*, 650 F.2d 501 (4th Cir. 1981). As a result, under this approach, the expectations caused by the actions of the opposing party are relevant to whether there has been a contractual waiver. *See AMCAR Div., ACF Indus., Inc. v. NLRB*, 592 F.2d 422, 429 (8th Cir. 1979); *S. Materials Co. v. Teamsters Local Union No. 822*, 198 N.L.R.B. 257-258 (1972).

**{24}** Notwithstanding the NLRB's guidance on evaluating contractual waiver defenses, the federal circuit courts are split on the issue, with some circuits following a more flexible approach, while others continue to apply other analyses. *Compare, e.g.*, *NLRB v. Auto Crane Co.*, 536 F.2d 310, 311-12 (10th Cir. 1976) (denying enforcement of an NLRB order finding a Section 8(a)(5) violation in the employer's unilateral imposition of a wage increase and thrift plan during the term of an agreement; holding the zipper clause of the labor contract—including the phrase referring to "any matter or subject not specifically referred to or covered in" the contract—constituted a clear waiver of the right to bargain), *with NLRB v. Challenge-Cook Bros. of Ohio, Inc.*, 843 F.2d 230, 233-34 (6th Cir. 1988) (granting enforcement of an NLRB order holding that the employer violated Section 8(a)(1) and (a)(5) of the National Labor Relations Act, finding that the zipper clause did not amount to a relinquishment of the right to bargain over effects of the employer's unilateral shift of production from one bargaining unit to another).

**{25}** The Union here argues that the "clear and unmistakable" language is the standard that we should apply in this case. The County, on the other hand, urges this Court to follow the decisions of the federal circuit courts that have found that broad-type waiver clauses satisfy the clear and unmistakable language. In our view, the answer does not call for a rigid rule, formulated without regard for the bargaining postures, past practices, and agreements of the parties for two reasons. First, notwithstanding the split in the circuits, the NLRB has continued to adhere to the broader position taken in *Radioear*. *See e.g., Temple-Eastex, Inc.*, 228 N.L.R.B. 203 (1977), *rev'd on other grounds*, 579 F.2d 932 (5th Cir. 1978); *A-1 Fire Protection, Inc.*, 233 N.L.R.B. 38 (1977), *remanded in part*, 600 F.2d 918 (D.C. Cir. 1979). Moreover, given our Supreme Court's direction in this area, we believe that application of the reformulated standard described by the NLRB in *Radioear* is the more reasoned approach to deciding the question of whether the language of the CBA expressly waived the right to negotiate the paramedic training contracts. *See Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 123 N.M. 239, 243, 938 P.2d 1384, 1388 (1997) (instructing that interpretations of the NLRA by the National Labor Relations Board and reviewing courts should act as a guide in interpreting similar provisions of the PEBA).

**{26}** We observe that there is virtually no evidence in the record and no argument in the district court in connection with bargaining history, expectations of the parties, past practices, or surrounding circumstances for the purpose of supporting or rejecting waiver on summary judgment. Additionally, the parties never argued to the district court that there were disputes of fact requiring a trial. They have also not done so on appeal. Therefore, we do not consider the bargaining history, the parties' interpretation of the language, or whether the case should be remanded for trial on the issue of waiver. *Woolwine*, 106 N.M. at 496, 745 P.2d at 721. The district court did not err in determining in the summary judgment proceeding that, as a matter of law, the Union did not waive its right to bargain based on the zipper clause.

**CONCLUSION**

**{27}** For the reasons set forth above, we affirm the decision of the district court.

**{28} IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**


_____
**JONATHAN B. SUTIN, Judge**


_____
**MICHAEL E. VIGIL, Judge**

7

**Topic Index for *County of Los Alamos v. Martinez*, Docket No. 29,085**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-SJ | Summary Judgment |
| | |
| **CN** | **CONTRACTS** |
| CN-BR | Breach |
| | |
| **EL** | **EMPLOYMENT LAW** |
| EL-CB | Collective Bargaining |
| EL-GR | Employee Grievances |
| EL-EP | Employer's Policies |
| EL-LU | Labor Unions |
| | |
| **GV** | **GOVERNMENT** |
| GV-PE | Public Employees |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |