This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37445**

**H&B PROPERTIES, INC.,**

Plaintiff-Counterdefendant-Appellant,

v.

**MARK MILLER,**

Defendant-Counterclaimant-Appellee,

and

**MARY MILLER,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Jarod K. Hofacket, District Judge**

Durham, Pittard & Spalding, LLP
Caren I. Friedman
Santa Fe, NM

for Appellant

Dixon Scholl Carrillo P.A.
Steven S. Scholl
Albuquerque, NM

Kerry Kiernan, P.C.
M. Clea Gutterson
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**DUFFY, Judge.**

**{1}**     H&B Properties, Inc. appeals from a judgment in favor of Mark Miller following a jury trial. We affirm.

## BACKGROUND

**{2}**     H&B Properties, Inc. is a family-owned business that owns and operates the NAN Ranch (the Ranch). In 2013, Miller approached H&B with a proposal to lead hunting parties on the Ranch. The parties subsequently entered into an oral agreement in which Miller would be the exclusive provider of guided hunts on the Ranch, provide predator control to increase the deer, elk, and antelope herds, and perform habitat improvement on H&B's land. In return, H&B would provide housing and resources to Miller and his hunting clients. The parties agreed that they would split the profits from the hunting excursions equally. Miller was permitted to sell and keep the income from the pelts of the predators he trapped. The parties operated under this agreement for three years.

**{3}**     At the time the agreement was made, the Ranch consisted of approximately 67,000 acres. In 2015, H&B could no longer make mortgage payments on the Ranch and decided to sell approximately 22,000 acres to an adjoining landowner. Miller viewed the sale as a problem because it reduced the land available for hunting; he testified that he had already made commitments to hunters that they would be able to hunt on 67,000 acres.

**{4}**     Shortly before closing was to occur in the spring of 2016, Miller recorded affidavits with the county clerks in both Grant and Luna counties, which stated that he had an agreement with H&B "to manage the wildlife on the Ranch" and that "the Agreement is for a period of ten years beginning 2013 thru year 2022 and encompasses the entire approximate 80,000+ acres of the NAN Ranch."[1] Miller's affidavits clouded title and interfered with the closing, though the buyer ultimately chose to complete the purchase after receiving an indemnity agreement from H&B. H&B's attorney sent Miller a letter demanding that he release the affidavits; Miller declined to do so. Both Miller and H&B interpreted these events as an end to their business relationship.

**{5}**     H&B filed a lawsuit to quiet title, for slander of title, and for a declaratory judgment declaring that the agreement described in Miller's affidavits affects title to the Ranch and is void. Miller counterclaimed for breach of contract, unjust enrichment, estoppel, and breach of partnership agreement. A jury found in favor of Miller on all claims and awarded him approximately $450,000 in damages for H&B's wrongful dissociation from the partnership.

## DISCUSSION

**{6}**     H&B raises four arguments on appeal: (1) the district court incorrectly applied partnership law; (2) the statute of frauds should apply to bar enforcement of the

---

[1]Plaintiffs clarified during trial that the total acreage of the Ranch was approximately 67,000 acres before the sale, not 80,000 acres.

agreement between the parties; (3) the jury received incorrect and misleading instructions; and (4) the damages award was excessive, was unsupported by the evidence, and violated due process.

## I.      H&B Stipulated That the Parties Formed a Partnership

**{7}**     Initially, we reject H&B's argument that the district court erred in finding, pretrial, that "[u]nder New Mexico Law, that parties herein engaged in a partnership supported by their joint efforts in furtherance of their oral agreement(s)." Although H&B argues on appeal that the parties "did not even come close to forming a partnership[,]" portions of the pretrial record demonstrate that H&B expressly agreed that the parties had entered into a partnership and invited the district court to conclude as much as a matter of law.

**{8}**     In the month before trial, H&B took the position that whether a partnership had been formed was a question of law. In its objections to Miller's proposed jury instructions, H&B wrote that Miller's proposed instruction on partnership "could mislead the jury into understanding that whether a partnership exist[ed] or was formed[] is a factual question for them. In reality, whether a partnership exist[ed] or was formed[] is a legal question for the [c]ourt." Shortly thereafter, H&B filed a brief in support of declaratory judgment and asserted as an undisputed fact that "H&B claims that the agreement was at will and not for a term of years." *See* NMSA 1978, § 54-1A-101(8) (1997) (defining "partnership at will").

**{9}**     The district court heard the matter at a hearing on February 2, 2018, four days before trial. The district court began the hearing by asking, "As I read the briefs, . . . are both parties urging that the relationship was a partnership and that the terms of the partnership are in dispute, but that the relationship was a partnership?" Counsel for Miller agreed, and counsel for H&B responded, "I agree that under New Mexico law it appears that a partnership is created any time there's, essentially, a joint venture." While H&B's counsel specifically noted that the terms of the partnership were in dispute—whether the partnership was at will or for a term of years—he again stated, "in terms of whether the law should interpret [H&B and Miller's] venture as a partnership at will, I think that's accurate[.]" The district court entered a minute order later that same day, which states in pertinent part that "[u]nder New Mexico Law, the parties herein engaged in a partnership supported by their joint efforts in furtherance of their oral agreement(s). It is a factual question for the jury as to whether the partnership was for a term of years or was an at-will partnership."

**{10}**     Because H&B agreed that the business venture between H&B and Miller was a partnership, we will not review H&B's claim that the district court erred in finding that the parties engaged in a partnership or that the court invaded the province of the jury in doing so. *See Cnty. of Los Alamos v. Martinez*, 2011-NMCA-027, ¶ 16, 150 N.M. 326, 258 P.3d 1118 ("Facts stipulated to are not reviewable on appeal." (internal quotation marks and citation omitted)).

## II.      Partial Performance and the Statute of Frauds

**{11}** H&B contends that even if a partnership existed, the statute of frauds bars enforcement of the parties' oral agreement for two reasons: (1) a partnership involving hunting rights involves an interest in real property; and (2) the lack of a written agreement is fatal to Miller's claim that the agreement was for a term of ten years. The district court rejected both arguments, concluding, in relevant part, that if the partnership were for ten years, then the doctrine of partial performance removed the agreement from the statute of frauds. Because we affirm the district court's conclusion regarding partial performance, we do not address H&B's other theory.

**{12}** The statute of frauds "was originally enacted to prevent fraud and perjury in the enforcement of obligations depending for their evidence on the memory of witnesses by requiring certain enumerated contracts and transactions to be evidenced by a writing signed by the parties." *Beaver v. Brumlow*, 2010-NMCA-033, ¶ 14, 148 N.M. 172, 231 P.3d 628 (internal quotation marks and citation omitted). As adopted in New Mexico, the fourth section of the English statute of frauds states, in pertinent part, that "no action shall be brought upon any agreement that is not to be performed within the space of one year from the making thereof; unless the agreement . . . shall be in writing, and signed by the party to be charged therewith[.]" *Jennings v. Ruidoso Racing Ass'n*, 1968-NMSC-081, ¶ 4, 79 N.M. 144, 441 P.2d 42 (internal quotation marks and citation omitted). Though we continue to enforce the statute of frauds, "judicial construction of the statute of frauds has resulted in limiting its application in order to overcome the harshness and injustice of a literal and mechanical application of its terms." *Beaver*, 2010-NMCA-033, ¶ 17.

**{13}** One well-settled exception is the doctrine of part performance, which provides that "[w]here an oral contract not enforceable under the statute of frauds has been performed to such extent as to make it inequitable to deny effect thereto, equity may consider the contract as removed from operation of the statute of frauds[.]" *Id.* ¶¶ 17-18 (internal quotation marks and citation omitted); *see also* 37 C.J.S. *Frauds, Statute of* § 182 (2020) ("[W]here one party to an oral contract has, in reliance thereon, so far performed his or her part of the agreement that it would be perpetrating a fraud on him or her to allow the other party to repudiate the contract and to set up the statute of frauds in justification thereof, equity will regard the case as being removed from the operation of the statute and will enforce the contract . . . by granting other appropriate relief, such as damages[.]" (footnotes omitted)). Consequently, a party seeking to enforce an oral agreement has a twofold burden: he must prove that the oral agreement actually existed, and he must prove that he "performed his part of the agreement to such an extent that it would be inequitable to deny enforcement of the agreement." *Nashan v. Nashan*, 1995-NMCA-021, ¶¶ 11, 18, 119 N.M. 625, 894 P.2d 402.

**{14}** "Applicability of the statute of frauds raises a question of law, which we review de novo." *Beaver*, 2010-NMCA-033, ¶ 13. As an equitable matter, "[w]hether or not there has been partial performance under the contract is a question of fact to be determined by the trial court." *Clodfelter v. Plaza Ltd.*, 1985-NMSC-036, ¶ 17, 102 N.M. 544, 698 P.2d 1; *see* 73 Am. Jur. 2d *Statute of Frauds* § 297 (2020) ("What constitutes part performance depends on the particular facts of each case. The sufficiency of particular

acts as a part performance is for the court to decide as a matter of law." (footnote omitted)).

**{15}** In this case, the parties stipulated to several facts concerning their agreement as part of the pretrial order entered on January 10, 2018:

> [1] In the spring of 2013, the parties entered into an oral agreement in which Mark Miller would provide predator control, perform habitat improvement and conduct guided hunts on the NAN Ranch. As part of this agreement, Mr. Miller would keep 100% of the animal pelts, furs, etc. derived from his predator control efforts, along with any income or gains attributable to the sale or trade of the same; [H&B] would provide housing and resources to Miller and his hunting clients; Miller would be the exclusive provider of guided hunts on the Ranch, would contract with the hunting clients and the hunting fees charged by Miller would be divided equally between H&B and Mr. Miller.
>
> . . . .
>
> [2] Miller did guide hunts on the NAN [Ranch] in 2013, 2014, 2015, and until May of 2016.
>
> [3] Miller and [H&B] split approximately $44,000 in income from hunting operations in 2013, $87,000 in income from hunting operations in 2014 and $94,700 in income from hunting operations in 2015.

H&B also acknowledged that Miller began trapping and conducting predator control on the Ranch in 2013 and continued to do so through April of 2016.

**{16}** The parties identified the primary issue in dispute as whether the partnership was at will or for a term of years. *See* § 54-1A-101(8) (defining "partnership at will" as "a partnership in which the partners have not agreed to remain partners until the expiration of a definite term or the completion of a particular undertaking"). At the February 2, 2018 pretrial hearing, the district court held that the jury would need to decide the factual question of whether the contract was at will or for a term of ten years. The court also ruled that if the jury determines the partnership was for a ten-year term as alleged by Miller, then "equity requires that partial performance, at least [as] that is described in stipulated facts in the pretrial order, is sufficient to remove the terms of the agreement outside of the statute of frauds." These rulings are reflected in the minute order, which states:

> It is a factual question for the jury as to whether the partnership was for a term of years or was an at-will partnership.

> The Statute of Frauds does not apply to the partnership as the record reflects sufficient partial performance by the parties, such that equity requires the Statute of Frauds be set aside.

**{17}** Because H&B agreed to the procedure adopted by the district court for determining both the term of the partnership agreement and whether there was partial performance, we will not address the merits of these issues on appeal.

**{18}** The remainder of H&B's challenge is, in essence, that the doctrine of partial performance does not apply because there was no evidence that the oral contract was for a definite ten-year term. This argument, however, conflates what are really two separate questions: whether there was an oral agreement for a term of years and whether it would it be inequitable to deny enforcement of the agreement. *See Nashan*, 1995-NMCA-021, ¶ 18 ("[T]he main questions are the same for a court faced with a case such as this one—was there actually an oral agreement such as that alleged by the plaintiff, and if so would it be inequitable to deny enforcement to the agreement?"). Viewed in this way, it is apparent that H&B is primarily challenging the sufficiency of the evidence demonstrating that the oral agreement contained a ten-year term.[2] H&B makes the same argument in its challenge to the damages award. For the reasons discussed in the final section of this opinion, we hold that the jury's findings regarding the partnership and its damages award are supported by substantial evidence in the record.

**{19}** As to the second question, H&B argues only that "even if there is partial performance on a contract, a court is not necessarily correct to remove it from operation of the statute of frauds."[3] Whether or not a district court's equitable decision regarding part performance is ultimately "correct," however, depends on the particular facts of each case. *Nashan*, 1995-NMCA-021, ¶ 12. In this case, H&B has not argued that the stipulated facts relied on by the district court are insufficient to demonstrate partial performance. And based on those facts, we agree with the district court's conclusion that equity favors enforceability here. Where the parties have stipulated to the existence of an oral contract and the jury has found, based on substantial evidence in the record, that the oral agreement is for a ten-year term, the district court did not abuse its discretion in concluding that the parties' three years of performance was sufficient to overcome the statute of frauds. As we said in *Herrera v. Herrera*, the statute of frauds is

---

2Although H&B argues on appeal that the existence of the agreement must be proved by clear and convincing evidence, H&B did not ask the district court to instruct the jury on this standard and therefore did not preserve this issue for appeal. Moreover, H&B fails to note that we expressly rejected the clear and convincing standard for oral contracts related to a partnership agreement in *Sanchez v. Saylor*, 2000-NMCA-099, ¶ 58, 129 N.M. 742, 13 P.3d 960 (stating that a higher degree of proof is required only for oral agreements involving interests in land).

3In *Alvarez v. Alvarez*, 1963-NMSC-124, 72 N.M. 336, 383 P.2d 581, the sole case relied on by H&B for this proposition, our Supreme Court evaluated whether the parties' performance demonstrated the existence of an oral contract and ultimately concluded that "no basis in fact has been proved to support a finding of an oral contract as pleaded[.]" *Id.* ¶¶ 22-23, 25. *Alvarez* does not stand for the proposition that the statute of frauds can otherwise bar the enforcement of an oral contract when the existence of the contract and its terms have been proved and the court is presented with sufficient evidence of the parties' partial performance.

not "to prevent the performance or the enforcement of oral contracts that have in fact been made or to create a loophole of escape for one who seeks to repudiate an agreement that he admits was made." 1999-NMCA-034, ¶ 13, 126 N.M. 705, 974 P.2d 675 (alteration, internal quotation marks, and citation omitted). We affirm the district court's ruling that equity renders the parties' agreement enforceable.

### III. Jury Instructions and Special Verdict Form

**{20}** H&B raises several claims of error with respect to the jury instructions and the special verdict form that we summarize as follows: (1) the jury was misled by instructions on the existence of a partnership and on the nature of the fiduciary duty owed a partner; (2) the district court failed to instruct the jury about partnership at will and improperly instructed the jury on dissociation in line with Section 54-1A-101(8) (defining partnership at will) and NMSA 1978, Section 54-1A-602 (1996) (discussing wrongful dissociation); and (3) the special verdict form did not ask the jury to make a finding on the nature of the partnership—whether the partnership was at will or for a term of years—and misled the jury about the nature of the partnership by allowing the jury to "fill in damages all the way to 2022 to complete the alleged ten-year term." Having carefully reviewed the record, we conclude H&B did not preserve these arguments for our review.

**{21}** To properly preserve an argument, a ruling or decision by the trial court must be fairly invoked. Rule 12-321(A) NMRA. "In order to preserve an issue for review, a party must have made a timely and specific objection that apprised the district court of the nature of the claimed error and that allows the district court to make an intelligent ruling thereon." *Gonzales v. Shaw*, 2018-NMCA-059, ¶ 14, 428 P.3d 280 (internal quotation marks and citation omitted). "The primary purposes for the preservation rule are: (1) to specifically alert the district court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue." *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791.

**{22}** Although H&B maintains that it preserved its claims of error by submitting its own proposed instructions and by submitting objections to Miller's proposed instructions, those actions do not paint a complete or accurate picture of the record. First, while we assume that both H&B and Miller submitted proposed jury instructions to the district court in early January in line with the scheduling order, the parties' proposed instructions were not made part of the record before trial.[4] While the record does contain H&B's written objections to Miller's requested instructions, these included only some of the issues it raises on appeal. For example, H&B objected to Miller's proposed

---

4H&B attached a set of their "contested/alternate" proposed jury instructions as an exhibit to their post-trial motion for judgment notwithstanding the verdict. Miller filed a motion in this Court to supplement the record with additional proposed instructions but we have denied the motion and have not considered its exhibits for purposes of this opinion.

instruction on partnership because it failed to mention or define partnership at will, and to Miller's proposed instruction on dissociation, but H&B has not directed us to where it raised any objection to Instruction 13, which informed the jury that "[t]he Court has determined that the agreement between the parties was a partnership," or Instructions 15, 16 and 18 on fiduciary duties. Our own review of the transcript confirms that H&B agreed to those instructions without objection. *See Harrison v. ICX, Ill.-Cal. Exp., Inc.*, 1982-NMCA-089, ¶¶ 18-19, 98 N.M. 247, 647 P.2d 880 (holding that because the plaintiffs concurred in the instruction and did not object before the jury retired to deliberate, they "participated in the submission of these matters to the jury, and they cannot now seek to have the verdict set aside by way of a motion for a new trial or on appeal"), *abrogated on other grounds by Martinez v. Friede*, 2004-NMSC-006, 135 N.M. 171, 86 P.3d 596.

**{23}** The dissociation instruction, Instruction 19, was resolved similarly at the conference settling the jury instructions. H&B noted that the parties had not agreed on an instruction and had submitted alternatives. The district court adopted the version proposed by H&B, which recited portions of Section 54-1A-602 and included language on dissociation by breach of an express term of the partnership agreement. Miller questioned whether that language was necessary but H&B insisted that it remain, saying, "I don't want [the jury] to think that it, it could only be for a definite term." Insofar as H&B now complains that this instruction was erroneous because it included the statutory language on dissociation by breach of an express term, "it is precluded from making that argument by its interjection of the error." *Pub. Serv. Co. of N.M. v. Diamond D Const. Co.*, 2001-NMCA-082, ¶ 25, 131 N.M. 100, 33 P.3d 651.

**{24}** In contrast to its handling of the dissociation instruction, H&B never invoked a ruling on its written objection or proposed instruction on partnership at will. H&B had multiple opportunities to raise the matter but never alerted the district court to an outstanding dispute or asked the court to rule. For instance, when the district court initially raised the written objections at the end of the February 2, 2016 pretrial hearing, saying, "Okay, except for jury instructions, have we gone through all of the objections that have been filed?" Miller's counsel responded, "I believe so, Judge. And the jury instructions, I think, we'll probably take up next week during the trial. I think we've done a pretty good job whipping them into shape. In light of the Court's ruling today, I think we'll work on narrowing those down significantly." Counsel for H&B did not respond or otherwise signal disagreement with that position, and the district court made no rulings on the parties' written objections.

**{25}** The parties settled the instructions at the conclusion of the evidence on the third day of trial, going through each instruction with the court one by one in the order they would be read to the jury. The parties concluded the conference without discussing partnership at will, either as an instruction or as a question on the special verdict form. Consequently, despite having submitted a written objection to Miller's proposed instruction and tendering its own instruction, H&B never solicited a ruling on the matter and failed to preserve the issue for appeal. *See Atler v. Murphy Enters., Inc.*, 2005-NMCA-006, ¶ 6, 136 N.M. 701, 104 P.3d 1092 ("To preserve an issue for review on

appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." (internal quotation marks and citation omitted)); Rule 12-321(A).

## IV.    The Jury's Award Was Not Excessive

**{26}**    H&B contends that the jury's damages award of approximately $450,000 was excessive. "The question of excessiveness is determined by (1) whether the evidence, viewed in the light most favorable to [the prevailing party], substantially supports the award and (2) whether there is an indication of passion, prejudice, partiality, sympathy, undue influence or a mistaken measure of damages on the part of the fact finder." *Sandoval*, 2009-NMCA-095, ¶ 16 (internal quotation marks and citation omitted) (noting that the award is excessive if either of these tests is met). "[When] we consider evidence that supports the award, we do so in a light most favorable to the award, and we do not consider conflicting evidence or evidence that supports a contrary view, in determining whether there exists substantial evidence to support a verdict." *Id.* ¶ 41.

**{27}**    H&B argues there is no evidence to support either a ten-year term or the amounts awarded by the jury for "reasonably expected profit." With respect to the ten-year term, Miller testified at trial that he discussed a ten-year term in his meetings with H&B. He also testified that it would take several years to get the big game program running and described in detail the work he put into the Ranch in furtherance of these long-term expectations. Miller stated that he routinely worked eighteen-hour days for four months each year on predator control (setting and checking coyote traps) and improving habitats, including building loose concrete molds, putting in drip systems, feeding quail, spreading sage seed, and transferring water for elk. All of this was done to allow deer and elk populations to grow. He testified that he had an expectation that his work would begin to pay off toward the end of the ten-year period because, as he explained, "in five or six years, when all of these babies are maturing and getting big, we [would] have enough to go with, to begin with, but [it] would really explode from then on, we would see profits and the ranch would really take off and peak in about ten years[.]" Miller testified that he would never have done all of the "grunt work" and development work if this was a year-to-year deal. This evidence is sufficient to support the jury's decision to award damages for the remainder of the ten-year period.

**{28}**    As for the amount, the parties stipulated to the total income received from the hunting operation beginning in 2013, which included approximately $44,000 in 2013, $87,000 in 2014 and $94,700 in 2015. Miller testified that he believed within a couple of years, the revenue could have amounted to around $200,000 a year. In addition, Miller put on witnesses who testified that they were willing to pay large sums of money to go on hunting excursions with Miller because of the quality of the hunts and the accommodations. One witness testified that he was in talks with Miller to go on an exclusive hunting trip that would cost approximately $120,000. Another witness testified that he, "[w]ithout a doubt," would pay more money for a great hunting experience such as the Ranch offered.

**{29}** Based on this evidence, the jury estimated that the partnership could expect profits ranging from $100,000 to $150,000 each year from 2016-2022, delineated by year on the special verdict form. The evidence supports the jury's incremental increase in profits each year for the remainder of the partnership and the amounts are proportionate to the partnership's past profits. *See Ranchers Expl. & Dev. Corp. v. Miles*, 1985-NMSC-019, ¶ 5, 102 N.M. 387, 696 P.2d 475 (holding that "the fact that lost profits may not be computed with exact mathematical certainty does not prevent the plaintiff from submitting the issue to the fact finder. The pre-existing or historic profits of an established business, together with other facts and circumstances, may be considered in arriving at a just estimate of the profit lost as a result of the breach of contract"). Accordingly, we see no basis to conclude the jury's damages award was excessive.

**{30}** Finally, we reject H&B's contention that the damages award was punitive rather than compensatory. *See Madrid v. Marquez*, 2001-NMCA-087, ¶ 4, 131 N.M. 132, 33 P.3d 683 ("Punitive damages are defined as sums awarded in addition to any compensatory or nominal damages, usually as punishment or deterrent levied against a defendant found guilty of particularly aggravated misconduct, coupled with a malicious, reckless or otherwise wrongful state of mind. Punitive damages punish the wrongdoer and serve as a deterrent; the award does not measure a loss suffered by the plaintiff." (internal quotation marks and citation omitted)). The jury was not instructed on punitive damages and nothing about the award indicates that it was punitive in nature or otherwise intended as anything other than to compensate Miller for damages flowing from wrongful dissociation.

**CONCLUSION**

**{31}** For all of the foregoing reasons, we affirm.

**{32}  IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**JANE B. YOHALEM, Judge**